## Case No. 672.

### The AVERY.

### [2 Gall. 386.] [1]

Circuit Court, D. Massachusetts. May Term. 1815.

PRIZE— DOUBTFUL CHARACTER OF VESSEL — CONDEMNATION AFTER A YEAR AND A DAY — REHEARING AT SUBSEQUENT TERM.

1. If, upon the ship's papers, it be doubtful, whether the property captured as prize belong to an enemy, it is not usual to proceed immediately to condemnation, although no claim be interposed. But if, in such case, no claim be interposed within a year and a day, condemnation is of course to the captors.

[See note at end of case.]

2. The circuit court cannot rehear a cause, or admit a claim, at a term subsequent to that, in which the cause was finally decided (a).

[Cited in Doggett v. Emerson, Case No. 3,- 901; Bank of United States v. Moss, 6

---

[1] [Reported by John Gallison, Esq.]

How. (47 U. S.) 38; The Illinois, Case No. 7.003.]

[See The New England, Case No. 10,151.]

In admiralty. W. Sullivan prayed the court to admit proof of the neutral ownership of a part of the cargo of this vessel, which had been some time since condemned for want of a claim, suggesting that this proof had been obtained from such a distance, as made it impossible to have received it before. The admiralty rule of a year and day, however suited to the courts of Europe, where communication may be had with all parts in sixty days, was not, he contended, applicable to a country so remote from many parts of the commercial world, as the United States.

W. Sullivan, for the promovants.

Before STORY, Circuit Justice, and DAVIS, District Judge.

STORY, Circuit Justice. The British brig Avery was captured on the 28th of April, 1813, libelled in the district court on the 28th of July of the same year, and afterwards, upon the hearing in the district court, the vessel and part of the cargo were condemned as enemies' property. As to the residue, a decree of dismissal was, by consent of the captors, made against them, from which they appealed to this court, and at October term, 1814, no claim ever having been, in either court, interposed to any part of the property, the same was finally condemned to the captors, and distribution ordered of the prize proceeds, which have accordingly been withdrawn from the registry of the court. A motion is now made by counsel, in behalf of certain merchants of Morocco, to interpose a claim to said property, and to have the same regularly tried, on an appeal to the supreme court. And the question to be decided, is, whether the court can now entertain this motion.

It is an ancient and indisputable rule of the law of nations, "Res in hostium navibus praesumuntur esse hostium, donec contrarium probetur." Locc. lib. 2, c. 4, note 11; Grot. lib. 3, c. 6, § 6; Bynk. c. 13. And it is the duty of neutral shippers to put on board the most plenary proofs, to repel this presumption. If they omit it, and a condemnation ensues, it is justly imputable to their own laches. It is not now usual, in the prize courts, to condemn goods for want of a claim upon the hearing at the return of the monition, except in cases where there is a strong presumption from the evidence, that the property actually belongs to an enemy. If there be probable evidence of a neutral interest, sentence is suspended for a reasonable time, to enable the party to make a claim. That reasonable time has been fixed, by the immemorial usage of the admiralty, to a year and a day. And if no claim is interposed within that time, condemnation follows of course in paenam contumaciae. 2 Rob. Coll. Mar. p. 89, note. Nor is this a mere arbitrary regulation. It

is to be found in analogous cases in the common law, as a limitation to the rights of property, in cases of wrecks, (2 Inst. 168,) and estrays, (Bl. Comm. 298; 5 Rep. [Coke,] 108;) in. the conclusive efficacy of a judgment in a writ of right, even against strangers, unless they sue within that term, (Plow. 357a; Co. Litt. 254b, 262;) in the limitation of the effect of a continual claim; in the prescription as to suing appeals of death; and in confining prosecutions for murder to cases, where the stroke and death happen within the same period. It is likewise found applied to similar purposes in the ancient Gothic constitutions. 1 Bl. Comm. 298; 4 Bl. Comm. 315. Above all, it is adopted in the civil law, in the early admiralty ordinances of France, in the laws of Oleron, and in the Consolato del Mare, as a limitation of right in cases of shipwreck, because, as the custom of Normandy expresses it, "eo tempore elapso, videtur Dominus habuisse pro derelicto." Cod. Naufragiis, lib. 11, tit. 5, 1. 2; Peck. Adm. Rem. Naut. 889; Consol. del Mare, c. 252; Les Us et Coutumes de la Mer, 53, 54; Laws of Oleron, 30. It is highly probable, from this summary history of the rule, that it has been generally received among all maritime nations.[2] At all events, it is a part of the admiralty law, which this court is bound to respect; and we are not at liberty, upon any notions of supposed inconvenience, to create a novel regulation. If the present be found unsuitable to our circumstances, as a maritime power, it will be for the legislature to devise a more just and equitable rule. Stare decisis is a great maxim in the administration of the law of nations.

In the case at bar, although no claim was interposed, condemnation was not finally pronounced, until about sixteen months after the prize proceedings were first instituted— and it was upon the footing of the general rule, that the sentence was then passed. That sentence has been completely executed, and a distribution made; and this court can have no more jurisdiction to revive or review the cause, or to sustain the present application, than it can have to adjudicate upon any other cause, which has been determined within twenty years. The supreme court have refused to re-hear a cause at a term subsequent to that, in which it was determined, being of opinion, as I well recollect, that the cause was no longer coram judice. Hudson v. Guestier, 7 Cranch, [11 U. S.] 1. It has also affirmed the doctrine, that where no claim is interposed for prize property, condemnation must go to the captors. If, therefore, the present motion could be granted, it would be of little avail to the parties. But it is utterly incompetent for this court, sitting as such, to grant an appeal in a cause, which is no longer within their cognizance. The motion must be overruled. In The Harrison, 1 Wheat. [14 U.

S.] 298, the doctrine of this case as to the year and a day was directly affirmed by the supreme court.

NOTE, [from original report.] The origin and various modifications of this prescription of a year and day are explained with great copiousness and learning by Heineccius in his essay "De praescriptione annali juris Lubecensis a jure communi diversa." Opera Minora, Syll. I. Exerc. 26. After remarking, that in the codes of all the principal German nations, the day is found superadded, tamquam auctarium quoddam, to the year; he proceeds to say (section 8) that the Germans of the middle age gave the name of "day" to that legitimate delay, which was indulged to every one before making his appearance in court; and as it was the custom for citations to command an appearance on the fourteenth day, and the party was to be thrice cited before he incurred the sentence of contumacy, this, including the three days assigned for appearance, gave six weeks and three days, which period was denoted by one word "day." Thus, if we may believe Heineccius, the "year and day" (annus et dies) originally signified a much longer period, than it is now thought to comprehend. He adds, however, that in the laws of Lubec, which he was examining, the word "day" means not six weeks and three days, but twenty-four hours only, and accordingly the prescription, which in Saxony extended to four hundred and ten days, was in Lubec confined to three hundred and sixty-six. From the same writer (section 17) it appears, that by this law the property both of real and personal things was lost, if not asserted within a year and a day. In this respect, it differs from the civil law, which allows a much longer time for immovable, than movable property. By the law of Lubec the prescription did not begin to run against absent persons, until they had knowledge of the event. But the civil law, in respect to movable things, granted no indulgence to the absent. (Section 18.) According to the French Encyclopedia (Jurisprudence —An et Jour) the day was added to the year, to avoid the difficulty of deciding whether the last day should or should not be included in the term. Much learning upon this subject, and an enumeration of several examples from the common law, will be found in Spelman's Glossary, 32.