THE PRESIDENT, DIRECTORS, AND COMPANY OF THE BANK OF THE UNITED STATES, PLAINTIFFS IN ERROR, *v.* HENRY K. MOSS, WILLIAM H. SHELTON, ROBERT A. PATRICK, AND CHARLES LYNCH, DEFENDANTS.

Where a declaration contained special counts upon promissory notes, and also the common money counts, although the jurisdiction of the court was not apparent upon the special counts, yet the money counts, sustained by evidence, might have been sufficient to sustain it; and this court will presume such evidence to have been given if the record is silent upon the subject, and if no objection was made to the jurisdiction in the progress of the trial.

Judgment having been rendered for the plaintiffs, it was not competent for the court below to strike out the judgment at the next term, on the ground of supposed want of jurisdiction.

The power of a court over its records and judgments examined and stated.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Southern District of Mississippi.

In 1838, the two following notes were executed, viz. : —

$ 10,715$\frac{53}{100}$.           *Brandon, March 17th,* 1838.

Nine months after 1st April, 1838, we, or either of us, promise to pay to Briggs, Lacoste, & Co., or order, for value received, ten thousand seven hundred and fifteen $\frac{53}{100}$ dollars, payable and negotiable at the Commercial Bank in Natchez.

H. K. MOSS,
W. H. SHELTON, *Sec'ty.*
R. A. PATRICK,
CHARLES LYNCH.

Indorsed, " Briggs, Lacoste, & Co."

$ 10,876$\frac{92}{100}$.           *Brandon, March 17th,* 1838.

Eleven months after 1st April, 1838, we, or either of us, promise to pay to Briggs, Lacoste & Co., or order, for value re-

ceived, ten thousand eight hundred and seventy-six $\frac{92}{100}$ dollars, payable and negotiable at the Commercial Bank in Natchez.

(Signed)                       H. K. Moss,
                               W. H. Shelton, *Sec'ty.*
                               R. A. Patrick,
                               Charles Lynch.

Indorsed, " Briggs, Lacoste, & Co."

In March, 1840, the Bank of the United States brought suit, in the Circuit Court of the United States for the Southern District of Mississippi, against Henry K. Moss, William H. Shelton, Robert A. Patrick, Charles Lynch, and Charles A. Lacoste. On the same day, a declaration was filed, consisting of five counts, in which all the defendants were averred to be citizens of Mississippi. The first two counts were upon the notes, each count being upon one note. In the first count, the indorsement is thus averred : — " And the said Charles A. Lacoste, together with Charles Briggs and Louis Hermann, who are not sued in this action, not being citizens of this State, by the name and style of Briggs, Lacoste, & Co., being partners in trade, using the name and style of Briggs, Lacoste, & Co., to whom or to whose order the payment of the sum of money in the said note," &c. ; and in the second count, upon the other note, it is thus stated : — " And then and there delivered the same to said Briggs, Lacoste, & Co. ; and the said Briggs, Lacoste, & Co, of which firm the said defendant, Charles A. Lacoste, is a partner, the rest not being citizens of this State, to whom or to whose order the payment of the sum of money in the said note specified was by the same to be made, after the making of the said note, and before the payment of the said sum of money therein specified, to wit, on the day and year last aforesaid, and at the district aforesaid, indorsed the same note in writing, by the name of Briggs, Lacoste, & Co.," &c.

The other three counts in the declaration were the common money counts.

The defendants all appeared, and pleaded the general issue.

At November term, 1841, on motion of the plaintiffs' attorney, the suit was discontinued as to Lacoste, and a jury, being impanelled, found a verdict for the plaintiffs, assessing the damages at $26,485.66, for which sum judgment was entered up.

At May term, 1841, the defendants, by their counsel, moved the court to set aside the verdict and judgment rendered in the cause, because the court had not jurisdiction, which motion was sustained. The verdict and judgment were set aside, and the case dismissed for want of jurisdiction, to which decision the plaintiffs filed the following bill of exceptions.

" Be it remembered, that at the present term of this court, the defendants in the above case came into court and moved the court to set aside the verdict and judgment in this case rendered at the last term of this court, and to dismiss the suit for want of jurisdiction of the court ; which motion is in the words and figures following : — ' The defendants by their attorney move the court to set aside the verdict and judgment rendered in this cause, and to dismiss the suit, because the court had not jurisdiction of the cause.' And thereupon came the plaintiffs and objected to said motion, but the court, without any evidence other than the record in said cause, sustained the said defendants' motion, and ordered said verdict and judgment rendered in this case at the last term of this court to be set aside, and the suit dismissed ; to which opinion of the court in sustaining said motion, and setting aside said verdict and judgment, and dismissing said suit, the plaintiffs by their counsel except, and pray that this their bill of exceptions be signed, sealed, enrolled, and made a part of the record in this cause, which is done accordingly.

"J. McKinley.    [seal.]"

Upon which exception, the cause came up to this court.

The cause was argued by *Mr. G. M. Wharton* and *Mr. Sergeant*, for the plaintiffs in error, no counsel appearing for the defendants in error.

The error assigned is, that the court below erred in setting aside, at May term, 1842, the judgment rendered at November term, 1841, in favor of the plaintiff.

The judgment was set aside at a term subsequent to that at which it was rendered ; and this was done for alleged want of jurisdiction in the court below over the cause of action. The defect of jurisdiction was alleged to arise from the first count of the narration not averring that one of the payees and indorsers of the note, Lacoste, was a citizen of some other State than Mississippi.

That the discontinuance of the suit as to Lacoste was not erroneous, and was a local practice sanctioned by this court, they cited McAfee *v.* Doremus, 5 How. 53. See How. & Hutch. Miss. Dig. 596, for the law of that State. The remaining three counts in the narration were the common money counts, and in them there was no pretence of error.

The first question arising upon the record was as to the power of the Circuit Court to set aside its former judgment. They contended that it was a general rule, that the same court which enters up a judgment cannot set it aside, at a subsequent

term, for errors of law. This would be tantamount to the power of reversing its own judgment.

The power of setting aside or opening judgments for fraud, irregularity, or misprision of the clerk, they asserted to be a different power.

As authority for their view of the first question, they cited and relied upon the following cases : —

In the courts of the United States, — Assessors of Medford *v.* Dorsey, 2 Wash. C. C. R. 433 ; The Avery, 2 Gall. 386 ; Cameron *v.* McRoberts, 3 Wheat. 591 ; Jackson *v.* Ashton, 10 Peters, 480. Ex parte Crenshaw, 15 Peters, 119, they said was not a decision the other way, because there the Supreme Court merely revoked its mandate, and declared its former judgment a nullity, as the cause had never been before it. Washington Bridge Co. *v.* Stewart, 3 How. 413 ; Jenkins *v.* Eldridge, 1 Woodb. & Minot, 61, were also cited.

In the Supreme Court of Pennsylvania, — Catlin *v.* Robinson, 2 Watts, 373 ; Stephens *v.* Cowan, 6 ib. 511 ; Gallup *v.* Reynolds, 8 ib. 424.

In New York, — Barheydt *v.* Adams, 1 Wend. 101 ; Soulden *v.* Cook, 4 ib. 217.

In North Carolina, — Anon., 2 Haywood, 73 ; S. C., Taylor, 146 ; Ib. 239 ; Bender *v.* Asken, 2 Dever. 149 ; Skinner *v.* Moore, 2 Dev. & Bat. 138.

The like general rule is settled in England. During the same term, judgments are amendable at common law, — being then in paper, *in fieri*, in the breast of the court. Afterwards, they are only amendable under the Statutes of Amendments or Jeofails. See 2 Tidd's Pr. 975 ; 2 Archb. P. 243 ; Ib. 202, 203, as to setting aside judgments for irregula. .y.

If courts were not held strictly to the rule contended for, what would become of acts imposing limitations on writs of error, or of those protecting purchasers at sheriffs' sales ?

The second question was this : — Was the judgment entered at November term, 1841, void or irregular, because the foreign citizenship of Lacoste was not alleged in the first count ? They contended that this was not the case ; it was merely matter assignable as error, upon a writ of error.

They cited, on this point, McCormick *v.* Sullivant, 10 Wheat. 192 ; Voorhees *v.* Bank of United States, 10 Peters, 449 ; Kemp *v.* Kennedy, 5 Cranch, 185 ; Skillen *v.* May, 6 ib. 267.

The courts of the United States are courts of limited, but not of inferior jurisdiction. Their judgments, until reversed on error, are conclusive between parties and privies.

Under this head, they further contended that there was not necessarily a defect of jurisdiction in the Circuit Court over the

first two counts, because it did not appear but that Lacoste was a citizen of another State when the note was indorsed. If he were so then, the jurisdiction of the Circuit Court would not be taken away, although, at the time of the bringing of the present suit, he had become a citizen of Mississippi. The 11th section of the Judiciary Act of 1789 would be fully satisfied by this construction. The right of the assignee of a chose in action to sue in the federal court could not be taken away by his assignor subsequently becoming a citizen of the same State with the defendant.

In the third place, they argued, that, under the statute law of Mississippi governing the case, the judgment of November term, 1841, was not erroneous, and that consequently, on a writ of error, this court would not have reversed the judgment. Although by the common law, where, in a civil suit, one count is good and the others bad, and there is a general finding, judgment will be arrested, yet, by the statute law of Mississippi, a different rule prevails. They referred to the 12th section of the act of 1820. (How. & Hutch. Dig. 591.) The defendant must apply to the court to instruct the jury to disregard the faulty count.

They contended that this statute was binding upon the Circuit Court of the United States for Mississippi. The act of Congress of May 19, 1828 (4 Statutes at Large, 218), provides that the forms and modes of proceeding then used in the highest courts of original and general jurisdiction in the States admitted into the Union since 1789 shall be the rules of the United States courts held in those States, subject to alterations and additions by said United States courts, or by the Supreme Court of the United States. The statute of Mississippi was passed eight years before this act of Congress. That State was admitted into the Union in 1817.

But, further than this, the Circuit Court of the United States for the Southern District of Mississippi adopted the practice and proceedings of the State courts by their printed Rules of 1839. See section 30 of those Rules.

This provision of the act of 1820 binds the United States courts in Mississippi, as one of the "forms and modes of proceeding" in that State. In support of this, they cited United States *v.* Boyd, 15 Peters, 187; McNutt *v.* Bland, 2 How. 9; Gwin *v.* Breedlove, ib. 29.

For the distinction between *final* and *mesne* process, as bearing upon this head, they cited Bronson *v.* Kinzie, 1 How. 311; McCracken *v.* Hayward, 2 ib. 608.

They admitted that the statute law of Mississippi (sec. 33, act of 13 May, 1837; How. & Hutch. Dig. 595), which com-

pelled plaintiffs to sue in one action the drawers and indorsers of promissory notes who live in Mississippi, does not confer upon the courts of the United States jurisdiction of a case where otherwise they would not have it ; nor is such a joint suit maintainable. in the federal courts, as has been decided in Dromgoole *v.* F. & M. Bank, 2 How. 241 ; Keary *v.* same, 16 Peters, 89, and Gibson *v.* Chew, ib. 315. But inasmuch as the suit had been, before verdict, properly discontinued as to Lacoste, this difficulty was removed, and the action stood as if originally brought against the present defendants alone.

In further proof of the error of setting aside the judgment in the Circuit Court, the three last counts showing jurisdiction, they cited and relied upon Mollan *v.* Torrance, 9 Wheat. 537.

Mr. Justice WOODBURY delivered the opinion of the court.

In this case, at the November term of the Circuit Court for the Southern District of Mississippi, A. D. 1841, a verdict was found for the plaintiffs against the defendants for $26,485.66. Final judgment was then rendered for that sum.

At the ensuing May term, on motion of the defendants, the court set aside both the judgment and verdict, and dismissed the case for what it considered to be a want of jurisdiction.

To this the plaintiff excepted, and a writ of error is now before us to reverse that decision.

The first question is, whether any want of jurisdiction appears on the record.

No evidence is reported, nor any defect apparent, which seems to raise any doubt concerning the jurisdiction, unless it be in the pleadings.

The declaration contained the usual money counts, — beside special ones on two notes, made to Briggs, Lacoste, & Co., or their order, and by them indorsed to the plaintiffs.

The defendants pleaded that they did not promise as alleged, and a verdict was found against them, without any statement being given of the evidence laid before the jury or the court, though copies of the two notes named in the declaration are printed in the case.

The various questions which this state of the record presents, and which bear upon the jurisdiction, can, when analyzed and separately considered, be disposed of chiefly by adjudged cases, without any labored examination of the principles involved. The special counts on the notes standing alone might not be sufficient, under the 11th section of the Judiciary Act, to give jurisdiction to a Circuit Court of the United States, without an allegation that the promisees resided in a different State from the promisors. Turner *v.* Bank of North

America, 4 Dall. 8; and 9 Wheat. 539; Dromgoole et al. *v.* Farmers' & Merchants' Bank, 2 How. 243; and Keary et al. *v.* Farmers' & Merchants' Bank of Memphis, 16 Peters, 95.

But it is very clear, that the money counts aver enough to give jurisdiction to the court below over them, as they state an indebtedness and a promise to pay, made directly by the defendants to the plaintiffs. Mollan *v.* Torrance, 9 Wheat. 539; Bingham *v.* Cabbot, 3 Dall. 41.

It is well settled, likewise, that the notes would at the trial be evidence of money had even of an indorsee. 4 Es. Ca. 201; 7 Halsted, 141; 6 Greenl. 220; 12 Johns. 90; 8 Cowen, 83; Wild *v.* Fisher, 4 Pick. 421; Webster *v.* Randall, 19 Pick. 13; Ramsdell *v.* Soule, 12 Pick. 126; Ellsworth *v.* Brewer, 11 Pick. 316; 16 Pick. 395; State Bank *v.* Hurd, 12 Mass. 172; 15 Mass. 69, 433; Page's Administrators *v.* Bank of Alexandria, 7 Wheat. 35; 2 Wm. Bl. 1269.

But they probably would not alone be sufficient, by the 11th section of the Judiciary Act, to give jurisdiction over them to a Circuit Court of the United States, under these money counts any more than the others, without additional evidence that the original promisees resided in a different State from the promisors. (7 Wheat. 35 *semb.*)

No decision, however, is made on this point, as from this record we cannot learn but that such additional evidence was given, or that other evidence than the notes was not introduced in support of the money counts.

It is not competent for this court now to presume that neither of these kinds of evidence was offered beside the notes. The inference, on the contrary, is the other way, or the defendants would probably have objected to the jurisdiction at the trial, and the jury not found a verdict for the plaintiffs, or the court not have rendered judgment upon it.

In the next place, if such a state of things did happen as there having been no additional or other evidence, it is clear from the record, that no advantage was taken of it till after final judgment, and at the following term of the court, and then by motion only.

But it was then too late, after final judgment, and at the next term, and by motion only, to set aside the judgment and verdict on account of a supposed want of jurisdiction. At the next term, if no final judgment had yet been rendered, the court might, from its minutes, have had the verdict applied to the counts on which it was in truth found. 2 Howard, 263; 2 Saund. 171, *b*; Tidd's Pr. 901.

And if, in this case, it was found on the two special counts alone, the judgment on the verdict might then have been ar-

rested for want of proper averments in them conferring juris-diction.

So it might have been arrested for a misjoinder of bad counts with good, if the verdict had not been applied to the latter, but remained general. Hopkins *v.* Beedle, 1 Caines's Rep. 347; 5 Johns. 476; 1 Chit. Pl. 236, 448; 1 Taunt. 212; 2 Bos. & Pul. 424; Cowp. 276; 3 Wils. 185; 2 Saund. 171, *b*; 3 Maul. & Selw. 110; Doug. 722.

But here jurisdiction did appear on three of the counts, and also final judgment had been rendered in November previous.

The action was not regularly on the docket at the new term in May following, when the court undertook to set the judg-ment aside. The power of the court over the original action itself, or its merits, under the proceedings then existing, had been exhausted, — ended. Jackson *v.* Ashton, 10 Peters, 480; Catlin *v.* Robinson, 2 Watts, 379; 12 Peters, 492; 3 Bac. Abr. *Error*, T. 6; Co. Lit. 260 *a*; 7 Ves. 293; 12 Ves. 456; 1 Stor. P. 310; 1 Hoff. Pr. 559; 2 Smith, Ch. 14; 9 Peters, 771; 3 John. 140; 9 John. 78; Kelly *v.* Kezir, 3 Marsh. R. 268.

This means the power to decide on it, or to change opinions once given, or to make new decisions and alterations on mate-rial points. A mere error in law, of any kind, supposed to have been rendered in a judgment of a court at a previous term, is never a sufficient justification for revising and annul-ling it, at a subsequent term, in this summary way, on motion. See cases *ante;* 2 Gall. 386; Cameron *v.* McRoberts, 3 Wheat. 591; 2 Haywood, 237; Skinner *v.* Moor, 2 Dev. & Bat. 138; Wash. Bridge Comp. *v.* Stewart, 3 How. 413; and Jackson et al. *v.* Ashton, 10 Peters, 480; Lessee of Hickey et al. *v.* Stew-art, 3 How. 762; Henderson *v.* Poindexter, 12 Wheat. 543; Elliot et al. *v.* Piersol et al., 1 Peters, 340; Wilcox *v.* Jackson, 13 Peters, 511; Rose *v.* Himely, 4 Cranch, 241.

We would not be understood by this to deprive a court, at a subsequent term, of power to set right mere forms in its judg-ments. 3 Wheat. 591; 3 Peters, 431; 12 Wheat. 10; Law-rence *v.* Cornell, 4 Johns. Ch. 542. Or power to correct mis-prisions of its clerks. The Palmyra, 12 Wheat. 10; Hawes *v.* McConnel, 2 Ohio, 32; 1 Greenl. 375; Com. Dig. *Amendment*, T. 1. The right to correct any mere clerical errors, so as to conform the record to the truth, always remains. Sibbald *v.* United States, 12 Peters, 492; Newford *v.* Dorsey, 2 Wash. C. C. 433; 6 Watts, 513; 8 Watts, 424; 1 Wendell, 101; 4 Wen-dell, 217; 1 Bibb, 324; 2 Bibb, 88; Weston's case, 11 Mass. 417; The Bank *v.* Wistar, 3 Peters, 431. Irregularities, also, in notices, mandates, and similar proceedings can still, in some cases, be amended. Ex parte Crenshaw, 15 Peters, 123.

Indeed, any amendments permissible under the Statutes of Jeofails may be proper at subsequent terms (2 Tidd's Pr. 917; 2 Arch. Pr. 202, 243); and at times even after a writ of error is brought.    2 How. 243; 3 Johns. 95; Poph. 102; Pease *v.* Morgan, 7 Johns. 468; Cheetham *v.* Tillotson, 4 Johns. 499; 1 Johns. Ca. 29; 2 Johns. 184; 1 Bing. 486; Douglass *v.* Bean's Executors, 5 Bing. 60.    So it is well settled, that at a subsequent term, when the judgment had before been arrested, an amendment may be made to apply the verdict to a good count if another be bad and the judge's minutes show that the evidence applied to the good count.    (Matheson's Adm. *v.* Grant's Adm., 2 How. 282, and cases cited there.)

 So a mistaken entry of a mandate, in a case where the parties were not at all before the court, may be revoked at a subsequent term, the hearing having been irregular and a nullity. Ex parte Crenshaw, 15 Peters, 119; 14 Peters, 147.    But no cause of this kind appears here in the proceedings, and nothing else appears to justify the court in going back to a final judgment of a previous term and summarily setting it aside for an error in the law or the facts, and dismissing the whole case from the docket.

The only relief for errors in law in such cases is usually by new trial, review, writ of error, or appeal, as either may be appropriate and allowable by law, or by some other mode specially provided by statute; where, for instance, a judgment has occurred at some previous term by default, through accident or some circumstance, which clearly entitles the party to redress. 12 Peters, 492; Jenkins *v.* Eldridge et al., 1 Woodb. & Minot, 65, and cases cited; Anthony et al. *v.* Love, 3 Ohio, 306; Bennett *v.* Winter et al., 2 Johns. Ch. 205; 3 Marsh. R. 268; Southgate *v.* Burnham, 1 Greenl. 375.

Beside these remedies, judgments entered up by fraud may, perhaps, on due notice, by *scire facias*, or otherwise, be vacated at a subsequent term by the same court, or if offered in evidence be deemed a nullity, should fraud be clearly proved to have taken place.    2 Roll. Abr. 724; 2 Bac. Abr. *Error,* T. 6.

But the present judgment was neither fraudulent nor void on its face, nor even voidable.    Had it been rendered on the special counts alone, it might have been voidable by a writ of error, for not alleging jurisdiction in the pleadings.    See *ante;* 2 How. 243; Capron *v.* Van Norden, 2 Cranch, 126.    But it has been repeatedly settled, that even then, without any plea to the jurisdiction, and after a verdict for the plaintiff on the general issue and final judgment, it is not a nullity, but must be enforced till duly reversed.    Kempe's Lessee *v.* Kennedy, 5 Cranch, 185; and Skillern's Executors *v.* May's Executors, 6

Cranch, 267.; McCormick *v.* Sullivant, 10 Wheat. 192; Voorhees *v.* Bank of United States, 10 Peters, 449; 3 Ohio, 306; Wilde *v.* Commonwealth, 2 Metc. 408; Hopkins *v.* Commonwealth, 3 Metc. 460. Because it would be a judgment rendered by a court, not of inferior, but only limited, jurisdiction, and the merits would have been investigated and decided by consent. This view is supported by the English doctrine. There, though judgments of inferior courts or commissioners are often void, when on their face clearly without their jurisdiction, and may be proved to be so and avoided without a writ of error (3 Bac. Abr. *Error*, A; 10 Cok. 77 *a;* Hawk P. C. ch. 50, sec. 3); yet the judgment of a superior court is not void, but only voidable by plea on error. Bac. Abr. *Void and Voidable,* C; 2 Salk. 674; Carth. 276. Even where the record of a circuit court did not contain any averments giving jurisdiction, this court has held that, at a subsequent term, after final judgment, the same tribunal which rendered it could not set it aside on motion. Cameron *v.* McRoberts, 3 Wheat. 591. And we have repeatedly decided as to judgments of this court, that they could not be changed at a subsequent term, in matters of law, whether attempted on motion, or a new writ of error, or appeal, on the mandate to the court below. Hunter's Lessee *v.* Warton, 5 Cranch, 316; 6 Cranch, 267; 1 Wheat. 354; Santa Maria, 10 Wheat. 442; Davis *v.* Packard, 8 Peters, 323; 9 Peters, 290; 12 Peters, 491, 343; 15 Peters, 84.

Without going further, then, into the reasons or precedents against the course pursued in the court below, the last judgment there, on the motion, must be reversed, and the case be reinstated as it stood before.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court on the motion dismissing this case be and the same is hereby reversed, with costs, and that this cause be and the same is hereby remanded to the said Circuit Court, with directions to reinstate this case as it stood in that court before the said judgment dismissing the case.