MORGAN'S LOUISIANA & T. R. & S. S. Co. *v.* TEXAS CENT. RY. Co., etc.   (Bill.)

FARMERS' LOAN & TRUST Co., Trustee, *v.* SAME.   (Cross-Bill.)

*(Circuit Court, N. D. Texas.*   October 28, 1887.)

1. JUDGMENT—ENTRY—POWER OF COURT TO MODIFY.

Except upon bills of review in equity cases, upon writs of error *coram vobis* in cases at law, or upon motions which, in practice, have been substituted for the latter remedy, no court can reverse or annul its own final decision or judgment for errors of fact or law, after the term at which they have been rendered, unless for clerical mistakes; from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing.

2. SAME.

After an appeal has been allowed and a *supersedeas* bond is taken, either during or after the term, jurisdiction as to all matters—certainly those of substance—determined by the decree is transferred to the court to which the appeal goes.

3. SAME.

Plaintiff brought suit to have a certain claim declared an equitable lien on the property of a railroad company, prior to the lien of two mortgages on the same property executed to defendant. Receivers were appointed by the court in accordance with plaintiff's prayer, and took charge of the property under order of court. Subsequently the court declared plaintiff's claim a lien on the property, but subordinate to the mortgages of which it decreed a foreclosure. Plaintiff appealed from the whole decree, and gave a *supersedeas* bond; and, after the expiration of the term in which this decree was rendered, the court, at the instance of defendant, modified its decree so as to order the property in the receivers' hands to be turned over, subject to the court's supervision, and pending the appeal, to the defendant, who was the trustee under the mortgages, in accordance with the condition in the mortgage that, upon default of payment, the trustee might take possession of the mortgaged property. *Held,* the court had no power over the decree after the expiration of the term and after the appeal had been perfected, and that the attempted modification was a substantial alteration.

This is an application by Morgan's Louisiana & Texas Railroad & Steam-Ship Company, complainant in the original suit, and defendant in the cross-suit, for a rehearing in respect to matters embraced in an order or decree, made herein, June 11, 1887, upon certain petitions of the Farmers' Loan & Trust Company. The Farmers' Loan & Trust Company also makes application for a resettlement of that order. The object of the original suit is to obtain a decree enforcing the claim of Morgan's Louisiana & Texas Railroad & Steam-Ship Company to an equitable mortgage or lien upon the property of the Texas Central Railway Company. That lien, the plaintiff insists, is superior to the liens created upon the same property by two mortgage deeds of trust, of the respective dates of September 15, 1879, and May 16, 1881, executed by the Texas Central Railway Company to the Farmers' Loan & Trust Company, as trustee, to secure certain issues of bonds. Under the prayer of the original bill, Charles Dillingham and Benjamin Clarke were appointed receivers, by an order entered April 6, 1885. In that capacity they took possession of and managed the mortgaged estate. The Farmers' Loan & Trust Company, by its cross-bill, claims that its liens are paramount to the lien, if any, of the plaintiff in the original suit. The prayer of that company is for a decree of foreclosure, and a sale of the mortgaged property, the proceeds to be applied to the payment of its costs, expenses, and compensation as trustee, and in discharge of the bonds and coupons secured by the deeds of trust. The mortgage deeds of trust, among other things, provide that—

"In the event that the said railway company should pay or cause to be paid the principal of said bonds, and the several installments of interest thereon, as the same become due, then this deed and all herein contained shall be void, and the property hereby conveyed shall revert to and revest in the said Texas Central Railway Company, its successors and assigns, without any acknowledgment of satisfaction, reconveyance, or other act; but in case the Texas Central Railway Company shall fail to pay the principal, or any part thereof, or any of the interest on any of the said bonds, at any time when the same may become due and payable, according to the tenor thereof, and if said default shall continue sixty days after having been demanded, then and thereupon the principal of all the said bonds hereby secured shall be and become immediately due and payable; and upon the request of the holder or holders

of seventy-five per cent. of said bonds then outstanding, and written notice of said request being served on the New York agency of the party of the first part, at which said bonds and coupons are made payable, the said trustee, (who may act by its president or attorney,) or its successor or successors in this trust, may and shall take actual possession (with or without entry or foreclosure) of said railway, and all and singular the said mortgaged property, and shall manage and operate the same, and receive all the income and profits of the same, together with all the books, papers, records, accounts, and money of the said railway company, first defraying out of the same the expenses of the road and its needful repairs, and the management of the said trust; and the surplus to pay the interest and principal of all the bonds which may be due and outstanding, and hereby secured, *pro rata.*   *   *   *   And the said Texas Central Railway Company, for itself, its successors and assigns, hereby covenants and agrees that in case of default in the payment of the principal of said bonds, or any installment of interest thereon, it will at once, upon demand, deliver possession of the railroad and other property herein conveyed to the trustee herein named, or to its successor or successors or assigns."

On the twenty-first of February, 1887, the Loan & Trust Company represented, by petition filed in the case, that it had been requested by the holders of 75 per cent. of the first and second mortgage bonds, secured by the deeds of 1879 and 1881, to take actual possession of the railway and mortgaged property, and manage and operate the same as in said mortgages provided, and to take such other course as might be necessary under existing circumstances to protect their rights as bondholders; and prayed that the court order the receivers appointed herein to deliver over to it the railway and other property now in their hands, "in order that it may take actual possession of the same, and operate the same, under and in pursuance of the provisions of the said mortgages or deeds of trust."

On the eleventh of April, 1877, a decree was rendered, whereby it was adjudged, among other things, that Morgan's Louisiana & Texas Railroad & Steam-Ship Company have an equitable lien upon the property of the Texas Central Railway Company, to secure its claim for $761,992.04, with interest from November 1, 1884, but that such lien is subordinate to those which the Farmers' Loan & Trust Company has, under the mortgage deeds of trust, to the amount of $4,150,528.18, with interest, for the benefit of the holders of bonds and coupons.   In default of the payment of the latter amount within a time fixed, the equity of redemption of the railway company, and of all parties to the suit, in and to the mortgaged property, was barred and foreclosed, and the property ordered to be sold to the highest bidder for cash.   Special commissioners were appointed to execute the decree.   The railroad and steam-ship company, and the Texas Central Railway Company, respectively, asked and were allowed appeals to the supreme court of the United States *from the whole of the decree,* on their giving bonds in the sum of $300,000. The required bonds—conditioned that the appellant would prosecute its appeal to effect and answer all costs and damages if it should fail to make good its plea—were executed and approved.   A citation on each appeal, returnable to the second Monday of the present month, was duly signed, and served in May last.   The transcripts of the records, on these

appeals, have been filed in the supreme court, and the cases are there regularly docketed.

On the eleventh of June, 1887,—the term at which the decree of foreclosure and sale was rendered having expired,— the Farmers' Loan & Trust Company presented to the circuit judge, at chambers, a petition which, after referring to the petition filed February 21, 1887, to the decree of foreclosure and sale, and to the advertisement of the sale, states:

"Thereafter appeals from said decree to the supreme court of the United States were perfected by the said Morgan's Louisiana & Texas Railroad & Steam-Ship Company, and by the said Texas Central Railway Company, their respective bonds for appeal having been duly approved by the judges of this court, to all of which reference is hereby made. Your petitioner further shows to the court that application has been made by the receivers in this cause, for authority to borrow $40,000, and to issue their debentures therefor, with interest thereon at the rate of seven per cent. per annum until paid, in order to pay the past-due and the future operating expenses of the said railroad, a copy of which petition is annexed hereto for reference as to its contents. Twenty-five thousand dollars indebtedness of said receivers is already in existence. The premises considered, your petitioner, the said Farmers' Loan & Trust Company, in virtue of the powers conferred on it in said mortgage, and of the action of the bondholders, set forth in said petition, now renews its said petition so heretofore filed in this honorable court, and prays for an order directing the receivers in this cause to deliver possession of all and singular the railway and property in their hands, and declared subject to the mortgages, as shown by said decree, into the possession of your petitioner, for administration and for operation by it under the terms of said mortgages, and under such terms and conditions as to your honor shall seem meet, and under the proper orders and supervision of this court, until the final determination of this cause. And it prays for all such orders, decrees, and relief as it is entitled to in the premises."

Upon this petition it was ordered and decreed, June 11, 1887, that "the Farmers' Loan & Trust Company, being the trustee in the mortgages heretofore foreclosed by the decree of the court in the above entitled causes, on the eleventh day of April, 1887, and having the powers conferred on it in the said mortgages, which are set forth in its said petition, subject to these suits; and it appearing to be equitable to the court that the said Farmers' Loan & Trust Company should have the custody, management, and operation of the railway and all the property subject to its mortgages now in the hands of the receivers, Benjamin Clarke and Charles Dillingham, and ordered to be sold by the said decree of this court, made and entered on the eleventh day of April, 1887, until the final hearing of these causes on appeal to the supreme court of the United States, or until the further orders of this court; but that the custody over said property shall continue subject to the orders of this court, and subject to the terms and conditions hereinafter set forth.' It was further ordered and decreed that upon the payment by the Farmers' Loan & Trust Company of the indebtedness (to be ascertained by the master) incurred by the receivers in the operation and control of the mortgaged property, including the compensation allowed to them and their counsel, they "shall immediately turn over and deliver, under the inspection, direction, and orders of said master, all the said railways, roll-

ing stock, and property and rights of every kind whatsoever, subject to said mortgage, in the hands, care, custody, or control of said receivers, and all the books and papers of said Texas Central Railway Company pertaining to the organization, operation, and business of said railway, to the said Farmers' Loan & Trust Company, acting by its duly constituted agent or attorney, under the signature of its president, and the seal of said company. * * * And thereupon, upon the payment of said indebtedness, the said Farmers' Loan & Trust Company shall be, and is hereby, invested with the possession, custody, care, administration, and management of all and singular the said railway, its property, franchises, rights, etc., subject to said mortgages, said property being delivered to said trustee for safe-keeping during the pendency of this cause; and it is ordered that said property be not alienated, nor encumbered, but be preserved as a good and safe-going railroad under the charter and franchises of the defendant."

This order was rendered upon the following, among other, conditions, viz.:

"(1) That the said Farmers' Loan & Trust Company, as trustee for the bondholders under its said mortgages, undertakes and agrees that the money for the future operation of said railways, and for all running and operating expenses thereof, shall be furnished by it, under its own arrangement with bondholders, and without appeal to the power or authority of this court to cause further charges or liens upon the property.

"(2) That the debentures heretofore authorized by this court, and issued by the receivers, amounting in the aggregate to the sum of twenty-five thousand dollars, remain in full force, subject to all the rights of the holders thereof, at the maturity thereof, to apply to this court for orders of payment of said debentures and interest thereupon, unless said payments be duly provided for by said Farmers' Loan & Trust Company.

"(3) Upon the further condition that said Farmers' Loan & Trust Company shall pay the allowances to be made by the court to the master in this cause to the present time, said master to continue in this cause, and to hear all claims which may be brought for damages growing out of the operation of the said railway in the hands of the present receivers: provided, that the same shall be filed before him within ninety days from the date of the discharge of said receivers, or the same shall be stale, and forever barred; and, further provided, that said Farmers' Loan & Trust Company shall provide for and pay off all such legal claims and demands arising under the administration of said property by the receivers.

"(4) Upon the further condition that said Farmers' Loan & Trust Company shall, within thirty days from this date, and prior to the vesting of the rights and authority in it by virtue of this order, execute a bond with security in the sum of one hundred thousand dollars, payable to the judges of the circuit court of the United States for the Fifth circuit and Northern district of Texas, conditioned faithfully to account for whatever shall come into its hands under the authority hereby vested in it, and to pay and apply the same from time to time as may be directed by the court, and obey such orders as the said court may make in the direction of said trust, which bond shall, before filing, be approved by this court, or a judge thereof, or by the said special master."

There was a further condition, requiring the Farmers' Loan & Trust Company to file its acceptance of the possession of the property, and all

of the rights vested in it by the order, subject to its terms and conditions; otherwise the order should be void.

On the twentieth of June, 1887, the railroad and steam-ship company presented to the circuit judge, at chambers, its application for a rehearing in respect to the matters covered by the order of June 11th, insisting that he had no power to make it in vacation, or after said appeals, with *supersedeas*, had been allowed and perfected.

It should be here stated that the Farmers' Loan & Trust Company asks, in the resettlement of the order of June 11, 1887, that the following clause be added to the first of the conditions upon which that order was based, viz.:

"It being fully understood, however, that the said trustee, in its accounting to be had as hereinafter stated, shall be entitled to charge, as against the moneys received by it from the operation of the railroads and property, any and all moneys which it may so furnish and advance under the provisions of this order, and shall have a lien against the trust estate for any excess of such moneys furnished beyond the amount so received."

It also asks that the order be further extended so as to provide:

"The Farmers' Loan & Trust Company, as to any money and claims against said railroad company which it may pay off under and in pursuance of this order, shall be entitled to be subrogated to the rights and claims of the previous holders of such claims against the trust property."

*J. Hubley Ashton* and *E. B. Kruttschnitt*, for Morgan's Louisiana & T. R. & S. S. Co. and Texas Cent. Ry. Co.    *Turner, Lee & McClure*, for Farmers' Loan & Trust Co.

Mr. Justice HARLAN, after stating the facts as above reported, delivered the following opinion:

It is an established principle that, except upon bills of review in cases in equity, upon writs of error *coram vobis* in cases at law, or upon motions which, in practice, have been substituted for the latter remedy, no court "can reverse or annul its own final decision or judgment for errors of fact or law, after the term at which they have been rendered, unless for clerical mistakes; from which it follows that no change or modification can be made, which may substantially vary or affect it in any material thing." *Sibbald* v. *U. S.*, 12 Pet. 488, 492; *Bank* v. *Moss*, 6 How. 31; *Bronson* v. *Schulten*, 104 U. S. 415; *Schell* v. *Dodge*, 107 U. S. 630, 2 Sup. Ct. Rep. 830; *Phillips* v. *Negley*, 117 U. S. 665, 6 Sup. Ct. Rep. 901; *Cannon* v. *U. S.*, 118 U. S. 355, 6 Sup. Ct. Rep. 1064. It is equally well settled that, after the court has allowed an appeal, and a *supersedeas* bond is taken, either during or after the term, jurisdiction as to all matters—certainly those of substance—determined by the decree is transferred to the court to which the appeal goes. *Draper* v. *Davis*, 102 U. S. 371; *Goddard* v. *Ordway*, 101 U. S. 752; *Hovey* v. *McDonald*, 109 U. S. 157, 3 Sup. Ct. Rep. 136; *Roemer* v. *Simon*, 91 U. S. 149; *Rubber Co.* v. *Goodyear*, 6 Wall. 156.

Can the order of June 11, 1887, be sustained consistently with these principles?

The Railroad and Steam-Ship company, in its original bill, alleges that the only manner in which it could obtain satisfaction of its claim, and a recognition of its prior lien, was through the interposition of the court, and the appointment of receivers with power to administer the property. The court appointed receivers; and such appointment, as we have seen, was under the prayer of the original bill.   The Loan and Trust company, in its cross-bill, sets forth that the mortgagor company was in default as to interest due, under said deeds, on May 1, 1885, and as to all interest due subsequent to that date; that the payment of interest had been duly demanded, and default had continued 60 days after such demand; and consequently the principal of the bonds secured by both deeds had become immediately due and payable.   The cross-bill further alleged that the mortgagor company was insolvent; that its indebtedness, bonded or otherwise, was so large that the company and its receivers were utterly unable to pay the floating debt and discharge the interest on mortgage bonds from time to time out of net earnings; that this state of affairs was likely to continue for an indefinite period of time; that, in consequence of the embarrassed condition of the financial affairs of the mortgagor company, it was impossible for the trustee, under the mortgage deeds of trust, to execute said trusts in the manner therein specified, without the aid or interposition of the court; nor could the trusts be executed, and the rights of the parties interested be ascertained and fully protected, otherwise than by a judicial sale of the mortgaged premises and property covered by the mortgage deed of trust.   The cross-bill also alleged:

"Until such sale can be had, and the proceeds thereof be distributed, your orator is likewise advised and charges that it is expedient and necessary that the franchises, property, premises, and appurtenances so mortgaged to your orator in trust as aforesaid, and all the rights, franchises, and property of the said defendant, the Texas Central Railway Company, of whatever name, nature, and description, including all its moneys on hand and the earnings of the same, *continue to remain* and be placed in the hands and under the control of a receiver, or receivers, with such proper powers and control over the same as to the court shall seem right and equitable to be conferred."

While the appointment of receivers was, in the first instance, a matter within the discretion of the court, the order placing the property in the hands of Dillingham and Clarke was a judicial determination that the plaintiff was entitled, under the circumstances disclosed, to have the property, pending the litigation, administered under the supervision and direction of the court, by receivers.   So far from that determination being questioned by the Loan and Trust company, its correctness was recognized by the cross-bill, and the court was distinctly informed that it was both expedient and necessary that the property should "continue to remain" in the hands of receivers.   The final decree was, in legal effect, a confirmation of the previous order, placing the property in the hands of receivers.

In view of these facts, it is clear that the order of June 11, 1887, does modify the final decree in material respects.   It proposes to dis-

charge the receivers appointed under the prayer of the original bill, and to transfer the actual custody and management of the property *to one of the parties*, who, as the trustee named in the mortgage deeds of trust, holds fiduciary relations to the property, and is hostile to the claim asserted by the original plaintiff to a prior equitable mortgage or lien. Although the order recites that the property is delivered to the Loan and Trust company for "safe-keeping during the pending of the cause," other recitals plainly show that it was based upon the right given and the duty imposed upon that company by the mortgage deeds of trust to take possession of the property and operate it, when default in the payment of interest or principal continued for 60 days after demand, and when the trustee should be requested to do so by holders of 75 per cent. of outstanding bonds, the railway company first receiving written notice at its New York agency of such request. But the right to such possession, if it was disputed, could have been enforced only in a direct suit for that purpose. *Trust Co.* v. *Railroad Co.*, 4 Dill. 116, 117.

After the appointment of receivers in the suit instituted by the railroad and steam-ship company, and so long as the receivership continued, this provision could be made available to the trustee only upon application, before final decree, to the court to vacate the order appointing receivers, and return the property to the mortgagor company. Instead of that course being adopted, at the outset, the trustee, by its cross-bill, not only advises the court that the property should continue to remain in the hands of receivers, but presented such facts as made it the duty of the court to adhere to the purpose of having it administered by one of its own officers. It is true that on the twenty-first of February, 1887—more than a year after this litigation was commenced—the trustee filed a petition, asking that it be put into possession of the property as trustee under the mortgage deeds of trust. It is sufficient, upon this point, to say that if any state of case would have justified the court in granting that request in this suit, after the Loan and Trust company had filed its cross-bill seeking a decree of foreclosure and sale, the fact that such a petition was filed is immaterial here; for no process was issued upon it, and no action was sought or taken upon it before the final decree was passed. If the attention of the court was called to it at the time the cause was submitted, the final decree must be regarded as confirming its previous action in taking possession of the property by receivers. The term having passed, and if it had not passed, an appeal with *supersedeas*, from the whole decree having been duly allowed and perfected, the circuit court had no power to change the *status* of the property by placing it in the custody of one of the parties, to be managed and operated, not for the benefit of all interested in the result of the suit, but subject to the mortgages under which that party claimed. It had no more power to do that than to set aside the order appointing receivers, and return the property, pending the appeal and after the decree was superseded, to the mortgagor company. This must be the result in every view of the case; for it cannot be said to be a matter of no consequence to the plaintiff in the original suit whether the property on which it claims to have a para-

mount lien is administered, under the orders of the court, and by a receiver, indifferent between the parties, or administered, under mortgage deeds of trust, by a party to the suit, which, as trustee, disputes its priority of lien.    It is plain that the order of June 11, 1887, varied the final decree in a matter of substance.

This view is not affected by the circumstance that the order provided that "the custody over all said property shall continue subject to the orders of this court, and subject to the terms and conditions" heretofore referred to.    If the court below, after the term, and after the decree was superseded, had power, upon grounds involving merely the safety or preservation of the property, to remove the present receivers and substitute others, the fact remains that the Farmers' Loan & Trust Company did not ask to be put in possession, as receiver of the court; nor did the court intend to substitute it as receiver in place of Dillingham and Clarke.    It directed that that company be put into possession in its capacity as trustee for bondholders, under the mortgage deeds of trust.    Its possession was none the less in that capacity, because the court reserved, by its order, a general control of the property, pending the appeal.

The learned counsel for the trustee contends that there is absolutely nothing in the case to sustain the claim of Morgan's Louisiana & Texas Railroad & Steam-Ship Company to a superior lien, and that the appeals in question have been taken for delay merely.    Upon that question I am not at liberty, at this time, to express an opinion.    That question is now before the supreme court of the United States for determination.    The plaintiff's claim to priority of lien was denied, and it was allowed and has perfected an appeal from the whole decree.    A belief that the appeal is for delay cannot, in law, affect the question whether the circuit court or circuit judge had jurisdiction to make the order of June 11, 1887.

For the reasons stated, I am of opinion that the circuit judge was without jurisdiction to make that order, and it is set aside.    It is scarcely necessary to say that, for the same reasons, the application for a resettlement of that order must be denied.

It is proper to say that these applications were ordered by the circuit judge to be heard before me as the justice of the supreme court assigned, for the time, to the Fifth circuit.