# CHARLESTON

## KING *v.* MASON, JUDGE.

Submitted February 24, 1906.    Decided November 21, 1906.

60    607
64    561
s64    611

1. MANDAMUS—*Redemption of Land.*

   A decree of the circuit court of Wyoming county, in so far as it adjudicated the right of K. to redeem a certain tract of land and fixed the boundaries thereof, was affirmed by this Court and the cause remanded with a direction to the court below to allow K. to redeem such parts of the boundary as he should designate by petition for that purpose. The cause was removed to the circuit court of Marion county, in which K. presented his petition for the redemption of five certain tracts of land, within the boundary lines fixed by the decree, and not claimed by any person who was not a party to the suit when the decree was pronounced, and said court refused to allow the petition to be filed. Upon an application by K. for a writ of *mandamus* to compel the judge of said court to allow him to redeem said five tracts, the writ was awarded to compel reception and consideration of, and action upon, said petition. Judges BRANNON and POFFENBARGER were of opinion that the plaintiff was entitled to a writ commanding the judge to allow redemption. (p. 610.)

   (SANDERS, JUDGE, Absent.)

Application by Henry C. King for a writ of *mandamus* to John W. Mason, Judge of the Circuit Court of Marion County.

*Writ Awarded.*

MAYNARD F. STYLES and WESLEY MOLLOHAN, for petitioner.

JOHN F. DILLON, HARRY HUBBARD, EDWARD C. LYON, C. W. CAMPBELL, W. B. CORNWELL and BROWN, JACKSON & KNIGHT, for Respondents.

POFFENBARGER, JUDGE:

The plaintiff, Henry C. King, asks a peremptory *mandamus* to compel the judge of the circuit court of Marion county to allow him to redeem certain forfeited lands, by way of execution of a decree of the circuit court of Wyoming county, after affirmance in part by this Court. See *State* v. *King*, 47 W. Va. 437. By that decree, the right of King to redeem such portions of a large tract of land as he might afterwards, by petition in the cause, designate for that purpose, was adjudicated, as against the State of West Virginia, but not it seems as against, or so as to prejudice the rights of, any person who might thereafter show himself to have title to the land by virtue of section 3 of Article XIII of the Constitution of this State. The decree, as it came to this Court, allowed King to redeem 327,000 acres of land by the payment of the taxes on 10,000 acres. It defined the boundaries of the 327,000 acres and declared that he had the right, superior to all other claimants, to redeem the land by paying the taxes chargeable thereon, with interest and cost of the suit and recited that no other person claimed, or appeared to have any right to redeem the same. The only fault found by this Court, with the decree, was that it did not locate and describe the 10,000 acres on which the taxes were paid, within the large boundary of 327,000 acres. The case was remanded to the circuit court of Wyoming "with directions to said court to permit the said appellee, Henry C. King, to amend his petition so as to carefully describe and accurately locate the portion of said land he desires to redeem, and to further proceed in accordance with the principles stated and directions given in the written opinion aforesaid." That part of the order of this Court which impaired the decree of the circuit court, reversed and annulled it "in so far as it" allowed "the appellee Henry C. King, to redeem the land described in the decree by reason of the payment of the sum of $3,090.08 costs, taxes and interest fixed

by the circuit court and in so far as it ascertained and fixes such costs, taxes and interest." This was followed by the following: "In all other respects the decree is affirmed." As the decree had affirmed and adjudged the right of King as against the state and all other persons who were then parties to the suit, and determined the boundaries of the tract to be in accordance with what was known as the W. D. Sell survey, the adjudication of the right to redeem and the location of the boundary lines was not disturbed by this Court on appeal.

After the cause was remanded, the State filed a number of amended bills by which a large number of claimants of portions of this land were parties defendant, and King filed a number of petitions, upon the original and amended bills, designating portions of the large tract which he desired to redeem and contesting the claims of other persons who came in and asserted title to portions of the land. The cause was transferred from court to court, and from county to county, and finally reached the circuit court of Marion. During the progress of these proceedings the bills and petitions were, from time to time, dismissed as to a great many portions of the land. . In some instances King compromised with persons who asserted claims against him, and, in others, he probably consented to dismissal for want of confidence in the validity of his title. With these matters we have no concern. Between him and some of those who contested his right, the controversies were litigated in the circuit court of Marion to a final decree, which was adverse to King.

That court made the basis of its decision its own finding and adjudication, of a boundary line differing in location from that of the Sell survey which had previously been adjudicated to be the boundary line. The tracts so dismissed were outside of the new boundary line fixed by the court, but inside of the boundary line as fixed by the circuit court of Wyoming. The court did not dismiss the bills and petitions on final hearing as to any lands which lay within the boundaries of the Morris grant as fixed by it. Outside of the boundary as determined by the Marion court, and within the boundaries as determined by the Wyoming court, lay five tracts of land, to which nobody in that suit had asserted

any claim of title in the cause at any time. The circuit court having dismissed the bills and petitions as to all the land lying between the two boundary lines, King immediately tendered a new petition, asking to be permitted to redeem said five tracts and offering to pay the taxes thereon. The court rejected said petition, thereby refusing to allow him to redeem said tracts.

Thereupon he came to this Court and obtained an alternative writ of *mandamus*, requiring said court to allow him to redeem said tracts of land, or show cause, by a certain day, why a peremptory writ should not be awarded compelling him to do so. In his return to the alternative writ, he admitted the rejection of the petition and denied the right of King to redeem said tracts, thereby clearly showing his intention to refuse to allow such redemption.

The decree of the circuit court of Wyoming county, as affirmed in part by this Court on appeal, adjudicated and finally settled, as against the State and every person who was then a party to that suit, King's right to redeem said five tracts of land, and fixed the boundary line of the entire 327,000 acres, in accordance with the Sell survey. Neither the State nor any one else who was a party to that suit can ever alter or in any way impair the effect of that adjudication. Nor does it bind any person who was not a party to the suit at that time, or who had not so participated in the litigation at the time of the affirmance of the decree as to be estopped thereby. Whether or not any one is so estopped we do not now decide. We assume, agreeably to the contention of counsel for the defendant, in the interest of perspicuity, but do not decide, for the purposes of this case or any other, that persons who were not parties to the suit at the time the decree was made and entered may contest that boundary line and King's right to redeem, and show that it is not the true line and that he has no right to redeem, if their titles are superior, or the evidence sustains their contention that the boundary line is wrong. But, this conceded for the purpose of argument, they cannot overthrow that decree or impair it, either as to the boundary line or King's right to redeem, except in so far as it effects or relates to the particular lands which they claim. They cannot set it aside *in toto* as to either of these matters. It cannot, at

their instance, be set aside, annulled, avoided or ignored as to lands which they do not claim.    And if there be any land within the survey, not now or hereafter claimed by anybody adversely to King, it will forever stand as to these lands.    If nobody has come into the suit, as yet, claiming any particular tract of land, he may come in later, for aught that we can see now, and assert claim to them, but King's right to redeem will be perfect under that decree until he does come in and successfully resist King's right of redemption.

*Mandamus* is a proper remedy to compel an inferior court to execute a decree or judgment of this Court.    It has been frequently decided that a circuit court has no power to depart from a decree of this Court, for execution of which the cause has been remanded, or from its own decree after an affirmance by this Court and remand for execution.    If the circuit court should depart from it, or attempt to pronounce a different decree, or disturb any right adjudicated by the decree of this Court, as between those who were parties to the cause when it was pronounced, its action may be reversed on appeal.    But that is an indirect method of enforcement.    Upon reversal, the cause is remanded again for the same purpose for which it was first remanded.    Upon the second remand, the lower court might erroneously depart a second time, thereby giving right to another appeal, and so there might be appeal after appeal and reversal after reversal, without obedience to the mandate of this Court, or realization of the benefit of the decree.    All this requires time and expense, to which the lower court has no right to subject the party entitled to the execution of the decree.    If, upon refusal to execute it, he comes to this Court and obtains a writ of *mandamus* compelling the entry of such orders and decrees, as he is entitled to have by force of the decree of this Court, he obtains by direct means the immediate delivery of what he is entitled to, without delay and without expense.

This position and the reasoning on which it is based are fully sustained by the Federal Supreme Court in *Gaines* v. *Rugg*, 148 U. S. 228, in which Mr. Justice Blatchford, speaking for the court, said:    "In the present case, as we have before observed, there was no discretion to be exercised

by the circuit court; and, although it might have been admissible to raise the question by a new appeal to the proper court, yet in view of the delay to be caused thereby, we do not consider that such remedy would have been, or would be, fully adequate, or that a writ of *mandamus* is now improper.'' As to the power and duty of the lower court, after the affirmance of its judgment and remand of the case for execution thereof, he said: '' But we are of opinion that it is proper for this court, on this application for a writ of *mandamus*, to construe its own mandate in connection with its opinion; and if it finds that the circuit court has erred, or acted beyond its province, in construing the mandate and opinion, to correct the mistake now and here, and to do so by a writ of *mandamus*. Obeying the mandate of this Court, and proceeding in conformity with its opinion, in the present case, were not matters within the discretion of the circuit court.'' The same court had previously asserted and applied the same principles in the following cases: *Ex parte Dubuque and Pacific Railroad*, 1 Wall. 69; *Sibbald* v. *United States*, 12 Pet. 488; *West* v. *Brashear*, 14 Pet. 51; *Bank* v. *Moss*, 6 How. 31; *Corning* v. *Nail Factory*, 15 How. 451; *Noon* v. *Bradley*, 12 Wall. 121, 129; *Tyler* v. *Maguire*, 17 Wall. 253, 283; *Stewart* v. *Salamon*, 97 U. S. 361; *Durrant* v. *Essex Co.*, 101 U. S. 555; *Mackall* v. *Richards*, 112 U, S. 369 and 116 U. S. 45; *Hickman* v. *Fort Scott*, 141 U. S. 415. In the later case of *Bank* v. *Hunter*, 152 U. S. 512, the Court made this declaration: ''Compliance with a mandate of this court, which leaves nothing to the judgment or discretion of the court below, may be enforced by *mandamus*.'' To the same effect see *In re Bank*, 153 U. S. 246. The decisions of this Court are in full and exact harmony with the general proposition enunciated by these federal decisions. See *Butler* v. *Thompson*, 52 W. Va. 311; *Koon* v. *Doolittle*, 48 W. Va. 592; *Henry* v. *Davis*. 13 W. Va. 230; *Camden* v. *Werninger*, 7 W. Va. 528.

The return of the judge of the circuit court of Marion fails to show that any person has set up any claim to any part of any one of the five tracts of land, mentioned and described in the rejected petition. He says, in a most vague and indefinite way, that the parties to the suit are interested,

without indicating how they are interested. He supplements this statement by recitals and argument which indicate pretty clearly what he means by saying they are interested. They are claimants of other tracts of land, and, as such, interested in the location of the boundary line, a matter which he cannot disturb, in so far as it affects these five tracts of land, at the instance of persons who do not claim them, and · which, as regards these lands, is not a matter in litigation in his court at all, and can never be until somebody, as to whom that matter remains open, shall have set up a claim to them. His answer, therefore, presents no defense to the alternative writ, and shows no cause why a peremptory writ should not go against him.

Just at this point, it may be well to mention the applications of certain other persons to be made parties to this proceeding, on the ground that they are interested in the five tracts of land. Their petitions show that they are claimants, not of these lands, but of certain other lands. Their only interest, therefore, is in the legal question involved and the location of the boundary lines as to their own lands, not as it affects these lands. For this reason, their petitions were properly denied.

Thus far I have expressed only my own views concerning the grounds upon which the writ should be awarded, and so indicated the extent to which it should give relief. Just how far they are concurred in by the other three judges who participated in the decision, I am unable to say; but an equal division among us, concerning the measure of relief to be granted, renders it necessary for me to state the nature and extent of the disagreement on that point. JUDGE BRANNON and I are of the opinion that the writ should require the judge of the circuit court of Marion to permit King to redeem said five tracts of land. JUDGES McWHORTER and Cox are willing to award it, so far only as to require him to receive and act upon the rejected petition. I shall not undertake to set forth at length the reasons assigned by them for their conclusion. In short, they are, first, that, to require him to permit redemption, may prejudice the rights of some person who has set up a claim to the lands since the return of the judge of the circuit court was filed, or may hereafter come into the suit and assert such claim, and second, that we

cannot presume that the judge of the circuit court will not allow redemption, if no such claim has been set up, inasmuch as it is his plain duty to do so.

As the decree of the circuit court of Wyoming is not binding upon any person who was not a party to the suit at the time it was pronounced, the mere execution thereof cannot give it any effect or virtue which it does not now possess. When fully executed it will not be binding upon such person, no matter whether voluntarily executed by the circuit court, or under compulsion of this Court by its writ of *mandamus*. The effect will be exactly the same as if the circuit court had permitted the redemption, as it should have done. Moreover, this Court cannot assume that anybody will ever come into the proceedings and set up a claim to these lands, or has come in since the date of the return to the writ. We can look at that record only as it stood then, and are not at liberty to indulge in any surmises as to what may take place in the future, or may have taken place since said date.

Nor is it any defense to this writ that the circuit court will, when the petition is re-presented to it, probably allow redemption since this Court now declares it to be its duty to do so. It has once refused to do so, squarely and emphatically, and the judge thereof has come into this Court, by his return to the alternative writ and admitted such refusal, accompanying the admission by his denial of King's right to redeem. He not only rejected the petition and gave as a reason therefor his opinion that there was no right of redemption in King, but also, by his failure to obey the alternative writ, refused a second time to allow such redemption. Therefore, whether this Court is authorized to say that, in the act of rejecting the petition, he judicially considered and passed upon it or not, his refusal to obey the alternative writ and his denial of the right to redeem constitute sufficient ground for awarding the peremptory writ. He might have avoided it by the defense that he had not refused and did not intend to do so, and thereby procured the quashing of the alternative writ. But when he comes admitting that he has not allowed what the plaintiff is entitled to in his court, and denying his right to it, it is immaterial that he had not actually decreed against him. Merrill Mand. section 225. Nor

would the granting of relief to the extent to which JUDGE BRANNON and I are willing to grant it reflect upon the judicial capacity of the defendant any more than it does as it is granted. He has simply erred, and that is manifest in either view. The ablest judges sometimes do that and the correction of his error implies no impeachment of his ability. The remedy by which it is corrected is wholly immaterial in this connection.

*Writ Awarded.*