BUCKEYE COAL & RAILWAY COMPANY ET AL.
  *v.* HOCKING VALLEY RAILWAY COMPANY
ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
      FOR THE SOUTHERN DISTRICT OF OHIO.

No. 51.   Argued October 15, 1925.—Decided November 16, 1925.

1. Where a decree of the District Court, dissolving a combination
   violative of the Anti-Trust Act, retains jurisdiction for the purpose
   of making such further orders as may be necessary to execute the
   decree, a subsequent order finally approving a specific sale of
   property for that purpose exhausts the reserved jurisdiction in so
   far as that sale is concerned, and cannot be altered by that court
   upon the same facts and upon the application of private interests,
   after expiration of the term at which such order was made.   P. 47.
2. An order approving a sale of the stock of a coal company under
   a contract between the purchaser and a railroad company owning
   the stock, necessarily approved also a stipulation in the contract
   saving from impairment an existing pledge of the coal company's
   lands under the railroad's mortgage and an obligation of the coal

company under the mortgage to pay a royalty upon coal mined by it to the railroad's mortgagee.   P. 47.

3. Where a coal company, whose stock, owned by a railroad company, was sold with the approval of the District Court in execution of a decree against the railroad, its mortgage trustee and others, dissolving a combination as violative of the Anti-Trust Act, afterwards, in the state court, sued the railroad and the trustee for the purpose of avoiding obligations claimed under the railroad's mortgage, *held* that the decree of the state court denying relief was *res judicata* against the coal company in so far as its personal and private right to be relieved of such obligations was concerned. P. 48.

4. One who has no interest of his own entitling him to urge measures in execution of a decree dissolving a combination under the Anti-Trust Act has no *locus standi* to do so in the public interest, that being the function of the United States.   P. 48.

5. A corporation which was not injured by such a combination, and not party to the original decree dissolving it, and which is controlled by a person who bought all its shares under an order of the court made in execution of the decree, has no standing to intervene for the purpose of ridding itself, and so, in effect, the purchaser, of its obligations to other parties which existed at the time of the sale and were recognized by the order which authorized the sale. P. 49.

Affirmed.

APPEAL from an order of the District Court dismissing the appellants' petition in intervention seeking relief in a suit brought by the United States under the Anti-Trust Act and in which a decree had been entered for the dissolution of a combination of railway and coal companies. See 203 Fed. 295.

*Messrs. William O. Henderson* and *William Burry,* for appellants.

*Mr. John F. Wilson,* with whom *Messrs. A. C. Rearick* and *Paul Smith* were on the briefs, for appellee Hocking Valley Railway Company.

*Mr. Arthur H. Van Brunt,* for appellee Central Union Trust Company.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

The suit in equity in which this is an appeal was begun by the United States in the District Court for the Southern District of Ohio, Eastern Division, against the Hocking Valley Railway Company, five other railway companies, and three coal companies, and was heard before the three Circuit Judges of that circuit. It was a proceeding under the Anti-Trust Act to dissolve an illegal combination of the defendants to monopolize the business of transporting and selling coal from the coal fields of Ohio in interstate commerce. Act of February 11, 1903, 32 St. 823, ch. 544. A full hearing resulted, March, 1914, in finding that the illegal combination existed and in a comprehensive decree radically dissolving the combination. (203 Fed. Rep. 295.) The railway companies were directed to part with all their interests in the coal companies and the business of mining and selling coal was ordered to be separated from that of railway transportation by the sale of the stocks of the defendant coal companies held by the railway companies, and the dissolving of other relations which had made the combination possible and effective. Jurisdiction of the cause was retained by the court for the purpose of making such other and further orders and decrees as might be necessary to the due execution of the decree and the complete dissolution of the combination and monopoly therein condemned.

The Buckeye Coal & Railway Company was not a party to the original suit. All of its stock was owned by the Hocking Valley Railway Company. Its property consisted of 11,000 acres of coal land in the coal fields of Ohio, with an estimated deposit of 18,000,000 tons. In 1899, the Buckeye Company had pledged its coal lands in a mortgage of the Hocking Valley Railway Company to the Central Trust Company to secure $20,000,000 of the Railway Company's bonds. In the same mortgage, the Buck-

eye Company agreed to pay 2 cents royalty on each ton of coal mined by it to the Central Trust Company, the mortgage trustee, to be applied to the redemption of the bonds. The Buckeye Company was not an obligor on the bonds. The Hocking Valley Railway Company in addition to the pledge of its railway property, the Buckeye coal lands and the royalty, included in the mortgage also all the capital stock of the Buckeye Company. Upon an intervening petition of the original complainant, the United States, and after a hearing to which the Hocking Valley Railway Company and the Central Trust Company, the mortgage trustee, were parties, an order was made by the court by which the capital stock of the Buckeye Company was directed to be sold, freed from the lien of the mortgage, and subject to the approval of the court. This order was made May 19, 1916. The Hocking Valley Railway Company then made a contract with one John S. Jones, to sell him all the Buckeye Coal Company stock for $50,000 under a contract by which it was agreed that the stock sold should be released from the pledge of the mortgage. There was an express stipulation that the contract was not to impair the covenants of the Buckeye Company in the Hocking Valley Railway mortgage in respect of the lands of the Coal Company or of the 2 cents royalty, except that the Hocking Company agreed that its railroad property pledged under the mortgage should be first exhausted before any recourse should be had to the coal lands of the Buckeye Company. The contract of purchase was made subject to the presentation of its terms to the court and its approval. On October 5, 1916, the Hocking Valley Company reported the sale to the court, reciting the contract. On November 10, 1916, the District Court, after reciting the report of the contract of purchase and the dismissal of the appeal, and the tender of the purchaser for examination, found the purchaser satisfactory and approved the purchase. Jones took pos-

session of the stock and organized a new company, the Sunday Creek Coal Company, which by exchange of stock succeeded to the ownership of the coal lands of the Buckeye Company and that of other companies. It is conceded by counsel for the coal companies that the value of the property of the Railway Company which must first be resorted to to pay the bonds is far greater than the amount due on them, so that the lien on the coal lands is negligible.

In April, 1919, the coal companies brought a suit in a state court against the Central Trust Company and the Hocking Valley Railway Company, in Ohio, to quiet their title to the coal lands. The Common Pleas Court of Ohio, after a full hearing, denied the prayer and sustained the validity of the mortgage lien upon the coal lands and the royalty. The decree of the Common Pleas Court was affirmed in the intermediate appellate court and in the Supreme Court of Ohio. The final disposition of the cause was on June 7, 1921. This is pleaded herein by the Central Trust Company, trustee, as *res judicata.*

The coal companies, on December 6, 1921, applied for leave to the court below to file the intervening petition, here the subject of consideration. Leave was granted, and the Hocking Valley Railway Company and the Central Trust Company parties were required to answer. The prayer is that they be enjoined from enforcing the mortgage lien upon the coal lands of the Buckeye Company or the two cents a ton royalty. The ground urged is that the maintenance of these two liens constitutes such a relation between the coal companies and the Railway Company as to be a violation of the main decree and the Anti-Trust law, in that it furnishes a motive for the Railway Company illegally to favor the coal companies in their interstate transportation of coal to the selling markets. Thereafter, the United States by leave also filed a petition against the same defendants in which, in the public

interest, it asked that the association between the Railway Company and the coal companies be dissolved by cancelling the liens with or without compensation.

The petition of the United States and the petition of the coal companies came on for hearing together. The District Court denied the petition of the coal companies, on the ground, first, that the order of November 10, 1916, approving the sale of the stock of the Buckeye Company was a final order and the District Court had no power to alter it, and, second, that the decree against the two companies in the state court was *res judicata.* As to the petition of the United States, the court conceded that, under the reservation of the main decree, such an application could be made to it for further relief to achieve the purpose of the main decree. It said that the fact that the court had approved the sale of the stock of the Buckeye Company indicated that the court had found that the release of the liens was not essential to carrying out the purpose of the decree and did not involve such an association between the Railway Company and the Coal Company as to interfere with the effectiveness of that decree. But, while dismissing the petition, it left opportunity open in its order to the United States to apply for further relief in the matter, if such an association came to be used as a means of defeating the main decree. The United States has not appealed from this order of dismissal of its petition. The only appeal is that of the two coal companies.

There is an embarrassment of reasons why the appeal of the two coal companies should fail. Their intervening petition seeks to vary or set aside the order of the District Court, which necessarily approved not only the sale of the Buckeye stock but also the stipulation in the contract of sale that the pledge of the coal lands and the 2 cent royalty should be unimpaired. That order was made November 10, 1916. It was a final order in respect of the sale ap-

proved. The clause of reservation in the main decree, as the court below said, was exhausted so far as that sale was concerned. All the facts, including the contract of purchase, were then before the court. No new ones have since been developed. The term has long passed within which that order could be altered by the court which made it.

Second, the validity of the covenants of the mortgage entered into by the Buckeye Company was affirmed by the decree in the litigation between the Hocking Valley Railway Company, the Central Trust Company, the mortgage trustee, and the two coal companies, appellants. This was *res judicata*, so far at least as the personal and private rights of the coal companies were concerned.

Third, even if we assume that the United States might apply under the reservation clause to the District Court to direct the cancellation of the mortgage lien on the coal lands and the covenant as to the royalty, on a showing that they were being used to continue the illegal combination condemned in the main decree, it could only be done in the interest of the public represented by the United States. The petition of the United States on this head was denied by the court below, and the United States has taken no appeal. The status of the two coal companies in the court below and here is merely that of informers. Their attitude, if it is nicely analyzed, seems to be, that unless the mortgage lien on their coal lands to secure the railway bonds, and the 2 cent royalty, are cancelled, they may be induced to enter a conspiracy with the Railway Company by which the Railway Company will grant them unlawful and discriminating favors in railway transportation to enable them to increase the coal mined and the royalty to be applied to redeem the bonds. They wish to have this temptation to crime on their part removed, and incidentally have themselves relieved from obligations which were recognized by the court as valid and binding

in the judicial sale of the entire capital stock of the Buckeye Company, and which, as against them, have been adjudged valid by the courts of Ohio. The United States, which must alone speak for the public interest, does not appear with them on this appeal. They have therefore no *locus standi. United States* v. *Northern Securities Co.,* 128 Fed. 868.

Underneath all these reasons for dismissing the appeal, is the fundamental objection that these coal companies presented no case upon their petition justifying their intervention. They were not parties to the original suit. Their interest was not of persons who had suffered by the original combination made the subject of the main decree, who might have had relief under the 16th section of the amendment to the Anti-Trust Act, October 15, 1914, c. 323, 38 St. 730. They were really put forward as intervening parties in the interest of Jones, the purchaser at the judicial sale of all their stock through which he continues to manage them. His, and therefore their, only claim to be heard at all must be based on the decree confirming the purchase, part of the consideration for which, as approved by the court, they now seek to impeach.

*Decree affirmed.*