**WOODS BROS. CONST. CO., Inc., v. YANK-TON COUNTY, S. D., et al.**

No. 9160.

Circuit Court of Appeals, Eighth Circuit.

Nov. 21, 1931.

See also 21 F.(2d) 267.

John J. Hess, of Council Bluffs, Iowa (E. E. Wagner and Florence Ryan Foss, both of Mitchell, S. D., on the brief), for appellant.

Eldon W. Clark, of Yankton, S. D. (Lee H. Cope, of Yankton, S. D., on the brief), for appellees.

Before KENYON and GARDNER, Circuit Judges, and REEVES, District Judge.

KENYON, Circuit Judge.

This is an appeal from an order of the United States District Court of South Dakota of December 8, 1930, vacating a judgment entered in said court March 22, 1929, in favor of appellant in the sum of $23,700 in an action brought by appellant against appellees to recover compensation for certain work in a bank protection project along the Missouri river in Yankton county, S. D. The contract under which the work was done and the liability to appellant incurred was entered into between appellant and the board of county commissioners of Yankton county, S. D., said commission proceeding by virtue of chapter 193, Laws of 1921, which enlarged and amended section 8458 of the Revised Code of South Dakota of 1919 relating to drainage districts by making the same applicable to river protection afforded by dikes, retards, etc. The vacated judgment was a compromise one entered at the trial upon an agreed statement of facts, which was adopted by the court. In compliance with the judgment the board was proceeding to arrange a time for hearings on equalization benefits under the state statutes when the Supreme Court of South Dakota on May 7, 1929, in another, though similar, action held that chapter 193, Laws of 1921, was unconstitutional because the title of said act did not conform to article 3, section 21, of the State Constitution, which provided that no law should embrace more than one subject which must be expressed in its title. Woods Bros. Const. Co. v. Board of Com'rs, 55 S. D. 161, 225 N. W. 228, 230.

The reason the Supreme Court held chapter 193 of the Laws of 1921 unconstitutional was not because of lack of power in the Legislature to pass such an act, but because of the violation of the constitutional provision. The Supreme Court in its opinion said: "We do not believe any one would suppose that an act to amend section 8458 of the Revised Code, relating to drainage, would contain provisions authorizing the straightening of the Missouri river or the building of levees, dikes, or retards along the river, or that the amending of section 8458 would define the term drainage as including all of such works. We think the amendment is plainly unconstitutional, and that the county commissioners were without authority to let any such contract as that made the basis of this action, and that they cannot be compelled to approve the work or levy assessments to pay for it."

The board of county commissioners thereupon filed a motion for a modification of the judgment entered March 22, 1929, claiming that under the decision of the Supreme Court they had no authority to go ahead or carry out the judgment and mandate of the court. This was heard by the court on July 28, 1930, and December 8, 1930, the judgment entered on March 22, 1929, was vacated and set aside and the action dismissed upon the merits. The action was before this court heretofore on appeal from a decision of the District Court on December 16, 1926, sustaining a demurrer as to Yankton county and dismissing the action as to it. Woods Bros. Const. Co., Inc., v. Yankton County, S. D. (C. C. A.) 21 F.(2d) 267. This court held the county to be a proper party in view of the proceedings being in mandamus, and the rule of the federal court that mandamus therefrom issues only to aid the enforcement of a judgment. Thereafter Yankton county filed its answer and therein pleaded among other defenses the unconstitutionality of said chapter 193 of the Laws of 1921. The board of county commissioners in its answer pleaded likewise as to said statute.

The term at which the judgment was entered in favor of appellant for the $23,700 had expired a considerable time prior to the decision of the Supreme Court referred to, and the filing of the motion to vacate said judgment. The original judgment was entered in March, 1929. That term of court ended when the April term commenced on April 2, 1929. The motion to vacate was filed June 10, 1929. The order for judgment contains this reservation: "The court reserves full and complete jurisdiction of this cause and of all the parties thereto, for the purpose of making or entering any further orders or judgments that may be necessary for the protection of the plaintiff herein, and to compel the payment of its said judgment and to enforce performance of the same by the said Board of County Commissioners (and their successors in office), and other of-

ficers of the said county, in such manner as the court shall deem proper and necessary."

The requirements of the Code provisions as amended in 1921 had been complied with in letting the contract to appellant, the work was completed according to contract, the benefits were received by the district, and appellant has never been paid for its services.

Appellant's claim is that the District Court had no right or power to vacate said judgment after the term at which it had been entered had expired.

Appellees' contention is that the court had no jurisdiction to enter the original judgment, as under the subsequent decree of the Supreme Court in Woods Bros. Constr. Co. v. Board of Commissioners, supra, there was no jurisdiction of the subject-matter in said court at the time of entry of the judgment as the contract for the work was based on an unconstitutional statute, therefore was ultra vires and void, therefore the judgment was a nullity, and the court had inherent power to expunge it from its records and dismiss the suit.

The trial court held it had the right after the term had expired to vacate the judgment primarily on the theory that the same was a nullity by virtue of the decision of the Supreme Court of South Dakota as to the unconstitutionality of chapter 193, Laws of 1921, and secondly by virtue of the reservation hereinbefore set forth. Its views are made clear by the following quotations from its opinion[1]:

"It would therefore seem beyond controversy that this proceeding was founded upon a contract entered into under and by virtue of the provisions of this law that has since been held unconstitutional by the Supreme Court of South Dakota, and it further appears that this Court retained jurisdiction in the proceeding for the making of orders for the enforcement of judgment. * * *

"That this Court was without jurisdiction to try to determine any controversy between the parties hereto arising under said contract or under the pleadings in this action, because the Court had no jurisdiction of the subject-matter in the absence of a law under which the Board of County Commissioners could act."

We are unable to agree with the conclusions of the trial court. It seems clear to us that *at the time* the judgment was entered jurisdiction existed in the federal court so to do. There was diversity of citizenship,

the amount in controversy was sufficient, a legal right was asserted by appellant, and denied by appellees. "Jurisdiction" has been defined in Reynolds v. Stockton, 140 U. S. 254, 268, 11 S. Ct. 773, 777, 35 L. Ed. 464, as "the right to adjudicate concerning the subject-matter in the given case." The test of jurisdiction is whether there was power to enter upon the inquiry. Surely there was a "case" or "controversy" here within the meaning of article 3 of the Constitution of the United States. The subject-matter which was in controversy was appellant's claim for compensation for services rendered to petitioners for the project and to the owners of the lands. The term "subject-matter necessary to confer jurisdiction" means in the federal courts that a "case" or "controversy" within the meaning of article 3 of the Constitution of the United States is present. It is not necessary that the right asserted be based upon a valid law. That question goes to the merits of the action and not to the jurisdiction of the court. A federal court cannot refuse jurisdiction of a controversy because the constitutionality of a state statute may be involved.

In Flanders v. Coleman, 250 U. S. 223, 227, 39 S. Ct. 472, 473, 63 L. Ed. 948, the court said: "Whether the District Court has jurisdiction to grant any relief must be determined upon a consideration of the allegations of the bill and the amendment thereto. If there be enough of substance in them to require the court to hear and determine the cause, then jurisdiction should have been entertained." And on page 228 of 250 U. S., 39 S. Ct. 472, 474, 63 L. Ed. 948: "As this court has not infrequently said, jurisdiction must be determined not upon the conclusion on the merits of the action, but upon consideration of the grounds upon which federal jurisdiction is invoked."

The judgment of March 22, 1929, was conclusive as to all issues raised by the pleadings, and those necessarily involved in the rights adjudicated thereunder. The validity of the 1921 amendment to the South Dakota Drainage Laws was raised by the pleadings and was necessarily involved in an adjudication that appellant had the right to recover. Both the county and the board of county commissioners pleaded that chapter 193 of the Laws of 1921 was unconstitutional. The federal court had the power at that time to pass upon the validity of the South Dakota statutes under which the contract had been made. It was as competent in law to pass on the question as was the state court. Their constitutionality was an issue.

---

[1] Oral opinion.

Of course, federal courts accept as conclusive the construction of state statutes by the highest court of the state, no question of federal law being involved. Memphis Street Railway Co. v. Moore, 243 U. S. 299, 37 S. Ct. 273, 61 L. Ed. 733.

The Supreme Court of the state had not passed on the constitutionality of chapter 193 at the time judgment was entered. It had stood unchallenged on the statute books for approximately eight years. Surely the federal court was not called on to sit by and wait for a state court to determine its constitutionality before exercising its judgment thereon. In Burgess v. Seligman, 107 U. S. 20, 33–34, 2 S. Ct. 10, 21, 27 L. Ed. 359, the court said: "We do not consider ourselves bound to follow the decisions of the state court in this case. When the transactions in controversy occurred, and when the case was under the consideration of the circuit court, no construction of the statute had been given by the state tribunals contrary to that given by the circuit court. The federal courts have an independent jurisdiction in the administration of state laws, co-ordinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that by the course of their decisions certain rules are established which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate, and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But where the law has not been thus settled, it is the right and duty of the federal courts to exercise their own judgment; as they also always do in reference to the doctrines of commercial law and general jurisprudence. So, when contracts and transactions have been entered into, and rights have accrued thereon under a particular state of the decisions, or when there has been no decision of the state tribunals, the federal courts properly claim the right to adopt their own interpretation of the law applicable to the case, although a different interpretation may be adopted by the state courts after such

rights have accrued." Also, page 35 of 107 U. S., 2 S. Ct. 10, 22, 27 L. Ed. 359: "In the present case, as already observed, when the transactions in question took place, and when the decision of the circuit court was rendered, not only was there no settled construction of the statute on the point under consideration, but the Missouri cases referred to arose upon the identical transactions which the circuit court was called upon, and which we are now called upon, to consider. It can hardly be contended that the federal court was to wait for the state courts to decide the merits of the controversy and then simply register their decision; or that the judgment of the circuit court should be reversed merely because the state court has since adopted a different view." From Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195, we quote: "In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defence actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever." In Bunch v. United States, 252 F. 673, 675, this court said: "These judgments against the county rendered, not only every issue and defense made by the county in the actions on which they are founded, but every issue and defense that might have been made by the county in these actions, res adjudicata against it and its officers and agents, as between them and the plaintiffs in those judgments." See also (this court) Board of Com'rs of Lake County v. Platt, 79 F. 567; Board of Com'rs of Lake County, Colo., v. Sutliff, 97 F. 270; James et al. v. Germania Iron Co., 107 F. 597.

If an action had been brought in another state on the judgment of March 22, 1929, could it have been contended in defense that there was no right in Yankton county to enter into the contract because of the unconstitutionality of the statute? We think not.

It was a binding valid judgment at the time it was entered.

■ That it was a judgment based upon an agreed statement of facts, or if it could be considered a consent judgment, does not lessen its force or effect. Of course, jurisdiction cannot be conferred by consent and there was no attempt here so to do. We quote from 34 Corpus Juris, p. 133, § 337, as to a consent judgment: "But at the same time, as it has the sanction of the court, and is entered as its determination of the controversy, it has the same force and effect as any other judgment, and in the absence of fraud or mistake is valid and binding, as such, as between the parties thereto and their privies, and is not invalidated by a subsequent failure to perform a condition on which the consent was based, or by the fact that it obligates the parties to do that which they could not make a valid contract to do; and unless it is vacated or set aside in the manner provided for by law, it stands as a final disposition of the rights of the parties thereto." Also section 338, p. 134: "A judgment by consent or agreement operates as a waiver of all defects or irregularities in the process, pleadings, or other proceedings previous to the rendition of the judgment, except such as involve the jurisdiction of the court." Pooler v. Hyne (C. C. A.) 213 F. 154; Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Nashville, etc., Railway Co. v. United States, 113 U. S. 261, 5 S. Ct. 460, 28 L. Ed. 971; Harding v. Harding, 198 U. S. 317, 25 S. Ct. 679, 49 L. Ed. 1066; Swift & Co. v. United States, 276 U. S. 311, 48 S. Ct. 311, 72 L. Ed. 587.

The court had jurisdiction to enter the judgment. It found the facts to be as stipulated by the parties and adopted the same as its "findings of facts for the purpose of the final decision of the case." There has been no claim of fraud or clerical error or lack of consent in entering said judgment.

■ We face a situation therefore where a judgment entered by a federal court having complete jurisdiction is set aside by that court after the term at which it was entered, on the theory that a decision of the state Supreme Court holding invalid a statute, which is the basis of the suit, acts retroactively to defeat the federal court of jurisdiction. While the federal courts under the Conformity Statute, title 28, section 724, US CA, conform with certain exceptions to the practice, pleadings, and modes of procedure of state courts in like causes, yet the jurisdiction of the federal court is prescribed by the Constitution and acts of Congress and cannot be restricted or enlarged by the statutes of a state or decisions of state courts. In Hughes, Federal Procedure (2d Ed.) 412, it is said: "While the federal courts will follow the state practice as to the mere form of the judgment, their control over it from that time forward is regulated by the federal decisions and statutes, and not by the state practice. They may correct the record, after the term, in mere clerical errors, but in no other way. Under the federal practice and decisions a judgment cannot be set aside after the term during which it is rendered, though the statute may provide summary remedies by motion for the purpose of regulating judgments in its own courts." Mexican Central Railway Co. v. Pinkney, 149 U. S. 194, 13 S. Ct. 859, 37 L. Ed. 699; Collin County Nat. Bank v. Hughes (C. C. A.) 155 F. 389; Dunlop v. Mercer (C. C. A.) 156 F. 545.

■■ That there may be finality in judgments is essential to stability of rights and interests, and the general rule is that judgments and decrees at the close of the term at which they were rendered pass beyond the control of the court, and the court has no power then to destroy their legal effect unless proper steps are taken during the term to form the basis of a change thereafter. It is undoubtedly true that a court after the term may by proper order correct clerical and inadvertent errors. A much-quoted case on the subject is Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797. We quote therefrom, page 415 of 104 U. S., 26 L. Ed. 797:

"In this country all courts have terms and vacations. The time of the commencement of every term, if there be half a dozen a year, is fixed by statute, and the end of it by the final adjournment of the court for that term. This is the case with regard to all the courts of the United States, and if there be exceptions in the State courts, they are unimportant. It is a general rule of the law that all the judgments, decrees, or other orders of the courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified, or annulled by that court.

"But it is a rule equally well established, that after the term has ended all final judgments and decrees of the court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify, or correct them; and if errors exist, they can only be corrected by such proceeding

by a writ of error or appeal as may be allowed in a court which, by law, can review the decision."

And on page 417 of 104 U. S., 26 L. Ed. 797:

"The question relates to the power of the courts and not to the mode of procedure. It is whether there exists in the court the authority to set aside, vacate, and modify its final judgments after the term at which they were rendered; and this authority can neither be conferred upon nor withheld from the courts of the United States by the statutes of a State or the practice of its courts."

In Morgan's Louisiana & T. R. & S. S. Co. v. Texas Cent. Ry. Co. (C. C.) 32 F. 525, 530, Justice Harlan sitting at circuit said: "It is an established principle that, except upon bills of review in cases in equity, upon writs of error coram vobis in cases at law, or upon motions which, in practice, have been substituted for the latter remedy, no court 'can reverse or annul its own final decision or judgment for errors of fact or law, after the term at which they have been rendered, unless for clerical mistakes; from which it follows that no change or modification can be made, which may substantially vary or affect it in any material thing.' "

In United States v. Mayer, 235 U. S. 55, 67, 35 S. Ct. 16, 19, 59 L. Ed. 129, the court said: "In the absence of statute providing otherwise, the general principle obtains that a court cannot set aside or alter its final judgment after the expiration of the term at which it was entered, unless the proceeding for that purpose was begun during that term. * * * There are certain exceptions. In the case of courts of common law,—and we are not here concerned with the special grounds upon which courts of equity afford relief,— the court at a subsequent term has power to correct inaccuracies in mere matters of form, or clerical errors, and, in civil cases, to rectify such mistakes of fact as were reviewable on writs of error coram nobis, or coram vobis, for which the proceeding by motion is the modern substitute."

In Re Metropolitan Trust Co., 218 U. S. 312, 320, 31 S. Ct. 18, 20, 54 L. Ed. 1051, the court said: "Nor could the court exercise the general power which it possesses to modify or set aside its orders or decrees prior to the expiration of the term at which the final decree is entered; for in this case that term had ended before the motion was made." See, also, Wellman v. Bethea (D. C.) 213 F. 367; Mellon v. St. Louis Union Trust Co.

et al. (C. C. A.) 240 F. 359; Buckeye Coal & Ry. Co. et al. v. Hocking Valley Ry. Co. et al., 269 U. S. 42, 46 S. Ct. 61, 70 L. Ed. 155.

There are exceptions to the rule that a court cannot vacate a judgment after the term expires, etc., one of which is that where *upon its face* it is apparent that the judgment is a nullity the court may vacate it at any time. The oft-quoted case of People v. Greene, 74 Cal. 400, 16 P. 197, 199, 5 Am. St. Rep. 448, refers to such judgment as "a dead limb upon the judicial tree." In Mellon v. St. Louis Union Trust Co. et al. (C. C. A.) 240 F. 359, 360, this court recognized that a nunc pro tunc order could be entered "for the purpose of making the record speak the truth," and then said, page 360, "But this power cannot be exercised to change or modify the decree, or in any wise void the force of any part of the judgment or decree as originally intended and pronounced." But the court concedes, page 361, "that, if that part of the decree was absolutely void and therefore subject to collateral attack, the court has the power to set it aside at any time, even after the expiration of the term." In United States v. Turner, 47 F.(2d) 86, 89, this court said: "But all courts recognize that, where the court has no jurisdiction over the subject-matter, the judgment is not merely voidable, but is absolutely void." See, also, 33 Corpus Juris, p. 1075, § 36; 1 Freeman on Judgments, § 117; Pollitz v. Wabash R. Co. et al. (C. C.) 180 F. 950; Clark v. Arizona Mut. Savings & Loan Ass'n et al. (D. C.) 217 F. 640. A case strongly relied on by appellee is White v. Ladd, 41 Or. 324, 68 P. 739, 741, 93 Am. St. Rep. 732. There the court said: "A judgment void upon its face may be set aside or vacated at any stage of the proceedings, or at any time, whether within the term at which it was rendered or afterwards."

There are other exceptions to the general rule based upon the statutes and decisions of the various states and a number of these are cited by appellees. There is no federal statute on the subject, and statutes and decisions of the state courts, as we have before pointed out, cannot take away authority from the federal courts.

Counsel for both appellant and appellees refer with approval to Cyclopedia of Federal Procedure, § 1095, and quote therefrom. At page 202 thereof the author says: "Another corrective power of the court which survives the term at which a decree was entered is

the power to vacate and expunge a decree entry which is void on its face for want of jurisdiction or other invalidating cause, and it may be set aside after the term by the court, sua sponte, or at the instance of parties injuriously affected. Another instance of the proper exercise of the power to vacate a decree after the term, is that of a decree procured by fraud or false representation, providing the acts of fraud have relation to fraud extrinsic or collateral to the matter tried, and not to fraud in the matter on which the decree was rendered." It is to be noted that this refers to a decree "void on its face." Of course, if a judgment is void on its face for want of jurisdiction it binds no one and can be set aside by the court at any time. Practically all the cases cited by appellees are of this nature, and the fundamental error of appellees' entire argument is in failing to recognize this distinction. The rule is clearly stated in 34 Corpus Juris, § 439, p. 217, as follows: "Where a judgment is entirely void for want of jurisdiction, the power to vacate it or set it aside is not limited to the term at which it was rendered, but may be exercised at a succeeding term."

Appellees assume this judgment was a nullity and hence could be vacated after the term. This is merely reasoning in a circle.

International Harvester Co. of America v. Commonwealth of Kentucky, 170 Ky. 41, 185 S. W. 102, is strongly relied on by appellees. The Kentucky court there had imposed a criminal penalty under an anti-pooling statute of Kentucky, which statute was subsequently in another case held unconstitutional by the Supreme Court of the United States. 234 U. S. 216, 34 S. Ct. 853, 58 L. Ed. 1284. When it was attempted to collect the penalty imposed by the earlier judgment, the Supreme Court of Kentucky held that the judgment was invalidated by the intervening decision of the Supreme Court. There is a difference between a conviction of a criminal charge under an unconstitutional statute and the case at bar where there was a contract and work was performed thereunder. In the Kentucky case the penalty was imposed because of the unconstitutional statute alone. There were no contractual relations as in the present case. The unconstitutional statute here did not attempt to create any liability. Relying upon it appellant entered into contractual relations with the county, and outside of the fact that the county acted in making the contract because of the statute subsequently held unconstitutional, every element of contractual liability was incurred by the parties wholly aside from the statute.

The strongest case in favor of appellees' position is Metzger Motor Car Co. v. Parrott, 233 U. S. 36, 34 S. Ct. 575, 576, 58 L. Ed. 837, which is not cited by appellees. This case arose under a statute of the state of Michigan making the owner of a motor vehicle absolutely liable for injury occasioned by the negligent operation by any person of such vehicle. The court charged the jury that recovery was exclusively under the statute. The constitutionality of the same was challenged. After the trial of the case the Supreme Court of the state held the statute void as in conflict with both the state and the United States Constitutions, and the Supreme Court of the United States held that: "As the effect of the state decision on that subject is to determine that ab initio the statute was void, and as there was admittedly no right to recover in the absence of a valid statute, the obvious duty to reverse results." Here an absolute liability was imposed for damages. The basis of liability was not brought into existence by any human action co-operating with the unconstitutional statute. Liability was based upon the unconstitutional statute alone. While appellees may find some comfort in this decision, we think that case and this can be differentiated.

The vacation of the judgment here after the term was not for any reason recognized by the federal courts as an exception to the general rule. The vacation primarily was because the court was held to have had no jurisdiction over the subject-matter, and secondly because the power to vacate was held by the court to exist because of the reservation in the order for judgment, which we have heretofore set out.

Passing the doubtful question as to whether a court by such a reservation could determine its own powers after the term had ended and enlarge its authority conferred by statute, we are satisfied that the reservation reserves no power the court did not already possess. It certainly had power to enforce its own judgment. Without such power the judgment would amount to nothing. The reservation relates to nothing else. It was for the benefit of the plaintiff, to assist in collecting its judgment. The rule is stated in 34 Corpus Juris, p. 219, § 440, as follows: "An attempted reservation in the judgment itself of power to amend or vacate it at a subsequent term does not enlarge or extend the authority which the court otherwise has in

that behalf; and a new or amended judgment rendered at a subsequent term pursuant to such reservation is without jurisdiction and void; the prior judgment continues in force." A most interesting statement of Chief Justice Taney, who had prepared his opinion expressing his views upon a similar question arising in Gordon v. United States, 2 Wall. 561, 17 L. Ed. 921, is published in the appendix of 117 U. S. It is the last judicial paper of that eminent Justice, as ·he· died before the case was finally determined. In this he said, page 702: "The award of execution is a part, and an essential part of every judgment passed by a court exercising judicial power. It is no judgment, in the legal sense of the term, without it. Without such an award the judgment would be inoperative and nugatory, leaving the aggrieved party without a remedy. It would be merely an opinion, which would remain a dead letter, and without any operation upon the rights of the parties, unless Congress should at some future time sanction it, and pass a law authorizing the court to carry its opinion into effect." See, also, United States v. River Rouge Improvement Co., 269 U. S. 411, 417, 46 S. Ct. 144, 70 L. Ed. 339.

▉ The judgment being a valid and final one as far as the District Court was concerned, appellees' remedy if any was by appeal, and not by attempting to set aside the judgment after the term had expired. United States v. Mayer, 235 U. S. 55, 35 S. Ct. 16, 59 L. Ed. 129; Buckeye Coal & Ry. Co. v. Hocking Valley Ry. Co., 269 U. S. 42, 46 S. Ct. 61, 70 L. Ed. 155; Swift & Co. v. United States, 276 U. S. 311, 48 S. Ct. 311, 72 L. Ed. 587.

Appellant argues that regardless of the statute held unconstitutional by the state Supreme Court the county is liable and is obligated to pay for the work under the general drainage laws of South Dakota. We do not feel called upon to enter into this rather interesting field, as we are satisfied there was jurisdiction in the court to enter the original judgment, that the same was a final judgment, and that there was no power in the court to set it aside after the term had expired. The order of the trial court entered December 8, 1930, setting aside the judgment of March 22, 1929, is reversed, and the case is remanded with instructions to restore the original judgment of March 22, 1929, to the place ·it occupied before the erroneous order setting it aside.

Reversed and remanded.