**P. S. SEYMOUR–HEATH, Appellant,**

v.

**George T. GOGGIN, Trustee, etc.,**
**Appellee.**

**No. 21868.**

United States Court of Appeals
Ninth Circuit.

Jan. 10, 1968.

Barnes, Circuit Judge, dissented.

Morris Lavine (argued), Los Angeles, Cal., for appellant.

Hubert Laugharn (argued), of Craig, Weller & Laugharn, Los Angeles, Cal., for appellee.

Before BARNES, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

Appellee Goggin is the trustee in bankruptcy for four bankrupt corporations, Trans-Pacific Corporation, Columbia Stamping and Manufacturing Corporation, New-Bart Stamping and Manufacturing Company, and Communications Equipment Corporation. These bankruptcies have been pending since 1946. The record indicates that appellant, who will be referred to for convenience as "Heath" owned or controlled all of them, Trans-Pacific being a holding company for the others.

In or before 1959, a controversy existed as to whether Heath or the trustee was entitled to the stock of another corporation, American Pumice Company. The trustee claimed that Trans-Pacific owned it. The principal asset of American Pumice was property which the Government was then seeking to acquire through condemnation proceedings. The controversy as to the ownership in the stock in American Pumice, as well as certain others not here material, was settled by a compromise which was approved by the referee in bankruptcy, in all four estates, by an order dated October 20, 1959. The material parts of this order are set out in the margin.[1] The present

1. "(a) GEORGE T. GOGGIN, as Trustee of the estate of TRANS-PACIFIC CORPORATION, claims to be the owner of all of the shares of capital stock of AMERICAN PUMICE CO. Said AMERICAN PUMICE CO. is a defendant in certain condemnation actions including without limitation, actions in the United States District Court of the Southern District of California respectively numbered 3472 Civil and 311 N.D. Civil.

"(b) P. S. SEYMOUR-HEATH, sometimes referred to as HEATH, claims to be the owner of said shares of stock of AMERICAN PUMICE CO. and of the properties and proceeds thereof involved in said condemnation proceedings.

\* \* \* \* \*

"(a) All of the shares of stock of AMERICAN PUMICE CO. shall be the property of GEORGE T. GOGGIN, as trustee of the estate of TRANS-PACIFIC CORPORATION, free and clear of any right, title, interest or claim by P. S. SEYMOUR-HEATH \* \* \*. [T]he said HEATH \* \* \* has [no] right, title, interest or claim in or to any of the properties or assets of AMERICAN PUMICE CO. or in or to any of the proceeds of any condemnation action involving AMERICAN PUMICE CO.

\* \* \* \* \*

"(b) GEORGE T. GOGGIN as trustee of said bankrupt estates shall after this order becomes final, do each of the following:

\* \* \* \* \*

"2. Pay to P. S. SEYMOUR-HEATH the sum of $2,500.00, same to be used in connection with costs and expenses in-

controversy arises from this order, which, of course, is long since final.

So far as appears, all parties fully performed, at least until 1966. Heath desig-

curred by said HEATH in the prosecution of said condemnation actions.

\* \* \* \* \*

"(c) P. S. SEYMOUR-HEATH \* \* \* agrees that upon this order becoming final, a further order may be made denying with prejudice the petition in reclamation filed by HEATH on or about November 9, 1953, and now pending \* \* \* same being in respect to the ownership of the shares of stock of AMERICAN PUMICE CO., which said order shall also provide that the said GEORGE T. GOGGIN, as Trustee of the estate of TRANS-PACIFIC CORPORATION is the owner of all of the shares of said AMERICAN PUMICE CO. and that \* \* \* said HEATH nor \* \* \* has any right, title or interest in or to or lien or claim against the stock of AMERICAN PUMICE CO. other than as may be provided for in this order.

"(d) P. S. SEYMOUR-HEATH \* \* \* waives any interest in any of said condemnation actions or in the proceeds thereof or in any of the property referred to in any of said condemnation actions, excepting only as in this order is otherwise provided.

"(e) P. S. SEYMOUR-HEATH agrees that any claim of him or of any assignee of him shall be subordinated to the payment of all other creditors as herein provided. HEATH also agrees that when the order becomes final, he will waive any claim or right of action he may have, if any, against the said GEORGE T. GOGGIN in respect to each, all and any of the bankrupt estates referred to in this order, from the inception of the bankruptcy proceedings to the date hereof, excepting the matters to be performed by the trustee under the provisions of this order \* \* \*.

\* \* \* \* \*

"(g) When this order shall become final, the trustee shall cause AMERICAN PUMICE CO. to proceed with the prosecution of the condemnation actions above referred to. Said actions shall be prosecuted with reasonable diligence and no compromise of said action shall be entered into unless the terms of said compromise have been approved in writing by said GEORGE T. GOGGIN, as trustee aforesaid, HEATH, and the Referee in Bankruptcy in charge of the proceedings of TRANS-PACIFIC CORPORATION, Bankrupt.

"AMERICAN PUMICE CO. may appeal from any judgment or judgments rendered

in said condemnation actions or move for a new trial or a different form of judgment, but need not do so unless first there shall have been adequate security furnished to it by the trustee or HEATH to provide for all cost, expense and liability of every kind which might be incurred with such procedure; however, neither the trustee nor HEATH shall be under any obligation to furnish such security. If such security shall be furnished to AMERICAN PUMICE CO. by either of said persons then the desired action shall be taken either by AMERICAN PUMICE CO. or by a party furnishing the security, in the name of AMERICAN PUMICE CO. in the event that AMERICAN PUMICE CO. shall fail to take such desired action. Should a party other than the trustee or HEATH furnish the security, such security shall be a first obligation of AMERICAN PUMICE CO. in the event AMERICAN PUMICE CO. prevails in the appeal.

\* \* \* \* \*

"Said condemnation actions shall be handled on behalf of AMERICAN PUMICE CO. by RUSSELL B. SEYMOUR and FRANK C. WELLER and such attorney as may be designated by HEATH, the employment of such attorney, however, shall be authorized by the Referee in Bankruptcy in the matter of TRANS-PACIFIC CORPORATION and shall likewise be authorized by AMERICAN PUMICE CO. The compensation of such attorneys shall be approved and fixed by the Referee in Bankruptcy in the matter of TRANS-PACIFIC CORPORATION. Said attorney selected by HEATH shall be chief counsel.

"Actual costs incurred in said litigation shall be chargeable to AMERICAN PUMICE CO. in the first instance, but shall be advanced by the trustee out of funds presently held by the trustee from the several bankrupt estates in proportions to be fixed by the Referee. 'Actual costs' in this paragraph shall include all filing fees, reporter's fees and charges, including transcripts of proceedings, witness fees, service fees and any other similar items customarily expended in the progress of lawsuits of this nature, and shall also include the fees and expenses of expert witnesses only, however, if such expert witnesses are employed pursuant to an order of this court.

"Costs incurred in respect to attorney's fees in said litigation shall not be advanced by the trustee out of funds pres-

nated attorney Hugh L. Dolle to handle the trial of the condemnation cases for American Pumice; later, with Heath's consent, attorney Victor R. Hansen was also retained. The cases were tried and a judgment was entered on March 8, 1965 in favor of American Pumice for $167,250. Of this amount, $26,000 had been deposited in court when the condemnation actions were begun. Both the United States and American Pumice, through attorneys Dolle and Hansen, filed notices of appeal.

On July 26, 1965, a conference was held in the chambers of the referee, at which the trustee, his counsel, attorneys Dolle and Hansen, and Heath, were present. On July 30, 1965, an order was made as follows:

"1. That special counsel proposed [by Heath] to be employed in said condemnation action in substitution of Judge Victor R. Hansen and Hodge L. Dolle be denied;

2. That there be no appeal upon behalf of the trustee in said action;

3. If the Government appealed, Judge Victor R. Hansen and Hodge L. Dolle as special counsel to prosecute the defense thereof and represent the trustee therein;

4. If P. S. Seymour-Heath desires to proceed with an appeal from the award of the U. S. District Court, he may do so at his own expense and upon the posting of an acceptable surety bond in the amount of $225,000 with this court to protect these estates from any diminution from the award as it presently stands."

That order has also long since become final. Heath did not post the bond or provide funds for an appeal, and the appeal of American Pumice has lapsed. The order contains findings that Dolle and Hansen recommended against an appeal, giving their opinion that it would not be successful, that the trustee relied

---

ently held by him in the several bankrupt estates, but shall be paid in the manner hereinafter set forth.

"(h) If any of said condemnation actions shall become final, and judgment therein carried out, the following things shall be done in the order of priority set out and to the extent that funds are available:

1. AMERICAN PUMICE CO. shall pay to the attorneys employed to conduct said condemnation actions, a reasonable amount for services rendered by them in said condemnation actions, the amount, however, to be fixed by order of the referee in charge of the proceedings involving TRANS-PACIFIC CORPORATION.

2. AMERICAN PUMICE CO. shall pay to the appropriate taxing authorities or government agencies, whether federal, state or municipal, any and all taxes which may then be owing by AMERICAN PUMICE CO. If there be any disputed claims asserted, AMERICAN PUMICE CO. shall retain sufficient funds to equal the amount thereof and in addition thereto, a reasonable amount to provide for possible interest, penalties and costs of defending against said claims. HEATH shall have the right in the name of AMERICAN PUMICE CO. to dispute and litigate any claims asserted which he alleges to be invalid or excessive.

*    *    *    *    *

4. There shall be repaid to the trustee, all sums which may have been advanced by him under any of the provisions of this order.

5. AMERICAN PUMICE CO. shall pay to the trustee a sum, which, together with the funds or assets held by the trustee, will be sufficient to pay in full the principal amount of all claims filed and allowed and unpaid in any of the several bankrupt estates named herein, together with expenses of administration. P. S. SEYMOUR-HEATH or AMERICAN PUMICE CO. shall have the right in the name of the trustee to contest any claims which he or it deems to be invalid or excessive.

6. Upon receipt of said sums, the trustee shall assign and deliver to HEATH or his nominee, all shares of stock in AMERICAN PUMICE CO. and in TRANS-PACIFIC CORPORATION, whether preferred or common, which are in the possession of the trustee. Thereupon, the trustee shall have no claim, right, title, interest or lien upon any of the funds remaining in AMERICAN PUMICE CO. after payments have been made by AMERICAN PUMICE CO. pursuant to the provisions of this order."²

on their views, and that his counsel agreed. It was also found that the combined assets of the estates were less than $2500. The order is entitled in only two of the bankruptcies, those of Trans-Pacific and of Communications Equipment Corporation.

On July 18, 1966, the trustee filed in each proceeding, except that of New-Bart Stamping and Manufacturing Company, an application to enter into a compromise of the two condemnation cases. It recites that attorneys Dolle and Hansen are of the opinion that an appeal by American Pumice would be unsuccessful, a view in which counsel for the trustee concur. Dolle and Hansen also are of the opinion that there is danger that the United States may be successful in its appeal, that the award may be diminished or even lost.[2]

The compromise proposed is as follows: The United States will pay to the trustee the principal of the judgments. The trustee is to waive interest at 6% as follows:

1.) on $48,500 from October 19 to November 6, 1945—18 days;

2.) on $31,250 from November 6, 1945; and

3.) on $110,000 from March 30, 1945.

(A rough calculation indicates that the interest to be waived is in excess of $180,000.) The United States will waive any claim for any taxes on the award, including capital gains tax, and will pay the principal amount to the trustee, thus waiving its right, if such right exists, to offset against the judgment certain large tax and renegotiation claims that it has against various of the bankrupt corporations.[3] The moneys are to be used to pay costs of administration in the bankruptcy proceedings, amount not stated, and the residue is to be applied upon the claims of the United States. We express no opinion as to whether the government has any right of set-off.

It is apparent that the principal item of costs of administration will be the fees of Dolle and Hansen for defending the condemnation cases, and that, if the compromise is carried out, there will be no money for Heath and none for general creditors.[4] Heath asserts that the award

---

2. Nowhere in the record are any facts stated in support of these views. On the other hand, the record is equally barren of any facts on which an opinion to the contrary could be predicated.

3. These claims are listed by the referee as having been approved:

Tax claims:

| | | |
|---|---|---|
| against Trans-Pacific | | $ 11,194.88 |
| " Communications Equipment | | 128,477.80 |

Renegotiation claims:

| | | |
|---|---|---|
| against Trans-Pacific | | 246,537.75 |
| " Communications Equipment | | 110,517.15 |
| | Total | $496,727.58 |

An appeal, attacking the validity of these claims, is now pending here. Heath asserts that they amount to $346,000, not $496,727.58, and that none is valid.

---◆---

4. The referee, in his certificate on review, lists other claims as follows:

| | Trans-Pacific | Communications |
|---|---|---|
| Labor claims | $ 687.72 | $ 100.00 |
| State and local taxes | 9,086.81 | 7,446.52 |
| Unsecured claims | 9,313.26 | 34,718.85 |
| | $19,087.79 | $42,265.37 |
| Grand total | | $61,353.16 |

The present assets of the estates are $823.24.

is far too low,[5] that some or all of the tax and renegotiation claims of the United States can be defeated, and that the compromise will make the obtaining of any money, over and above expenses of administration and claims of creditors, impossible.

The referee, over the objections of Heath, approved the compromise by an order entered on September 23, 1966. Heath sought review by the District Court. By an order entered March 16, 1967, the court denied the petition for review. It adopted the findings and conclusions of the referee. It is from this order that Heath appeals.

■ Appellees seek to support the order on two grounds. First, they say that the order of October 20, 1959 cannot limit the general power of the trustee, with the approval of the court, to compromise. (See section 27 of the Bankruptcy Act, 11 U.S.C. § 50.) Much authority as to the power to compromise is cited. See, e. g., In re California Associated Prods. Co., 9 Cir., 1950, 183 F.2d 946, 949. But the question here is limited. Here, under an order approving a compromise made in the same bankruptcy proceedings, an order long since final, the trustee is bound by the following language:

"* * * and no compromise of said action[s] shall be entered into unless the terms of said compromise have been approved in writing by * * * HEATH." (See note 1, supra.)

We think that that order, which was made under the very broad authority conferred by section 27, is binding, and that the trustee had no power to violate it, nor has the referee or the court power to authorize the trustee to violate it. No case has been cited to us dealing with this problem. But we think that general principles of res judicata and law of the case, as well as those dealing with fi-

nality of judgments, require the conclusion that we reach.

If Heath were willing now to compromise the rights secured to him by the 1959 order, we would have a case like the California Associated Products Co. case. But he is not, and the trustee cannot, by ·compromising with someone else, deprive him of rights secured by the 1959 order. In essence, the 1959 order is a judgment by consent of the compromising parties. It is now final and is no more subject to being disregarded than any other final judgment. See Swift & Co. v. United States, 1928, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587; Woods Bros. Const. Co. v. Yankton County, S.D., 8 Cir., 1931, 54 F.2d 304, 308, 81 A.L.R. 300.

■ Second, appellees urge that the order appealed from does not violate, or is not inconsistent with, but carries out the terms of the 1959 order. This was the view of the referee, who construed the restriction upon compromises as relating only to a compromise occurring before trial of the condemnation cases. In so holding, he relied in part upon the language of that order dealing with appeals (see footnote 1) and also upon the order of July 30, 1965. We agree that the order of July 30, 1965, which is also final, governs the right of Heath to appeal, or to require American Pumice or the trustee to appeal. The requirements of that order not having been met, and the appeal having been dropped, the only pending appeal is that of the United States. But that does not necessarily mean that the trustee can compromise, while the appeal is pending, or after judgment, without Heath's written consent.

We think that the language of the 1959 order, which is quoted above, means the entire actions, including proceedings after judgment, if any, whether by appeal or otherwise. Unless the word "actions" is so construed, the protection afforded

---

5. In this he is perhaps corroborated by a letter, written to him by attorney Dolle after trial but before judgment in the condemnation cases. There, Dolle indicated that he anticipated a far more substantial recovery and that "the valuation testimony presented by the government was shabby and almost worthless." We do not pass upon the validity of Heath's claims that an appeal should be successful. However, his good faith in so believing is nowhere questioned.

to Heath, as well as to the trustee, against unacceptable compromises, could well become illusory. A compromise after judgment and pending appeal could be just as damaging as one made before judgment. The facts in this case are illuminating. The proposal is to waive in excess of $180,000 in interest, and the only visible benefit to anyone from the compromise is that what is left of the judgment can be used to pay expenses of administration, including the fees of Messrs. Dolle and Hansen, the balance to be applied to the government's tax and renegotiation claims. We note that the trustee declined to seek review of the tax and renegotiation claims of the government, and that it is Heath who is bearing the burden of that review. Even if he were wholly successful, most of what would come in from the compromise here involved would still be used up in the bankruptcy. The total to be received is $167,500. The other claims total $61,-353.16, plus attorneys fees for Dolle and Hansen, plus advances, if any, by the trustee in the condemnation cases, plus expenses of administration in an unknown (so far as the record shows) amount. We think that it was against just such a possibility that the requirement of Heath's consent was designed to protect him.

Nor do we find anything in the provisions of the 1959 order relating to appeals that is inconsistent with the foregoing. Those provisions merely recognize the fact that an appeal costs money and involves risks. They cut off the obligation of the trustee to advance moneys in support of an appeal by American Pumice or Heath, making it clear, however, that Heath can, upon giving security against loss, prosecute an appeal at his own expense.[6] They do not deal at all with what is to be done about an appeal by the United States. This is taken care of by the July 30, 1965 order, which directs that, if the United States appeals, Dolle and Hansen are to defend the ap-

peal and represent the trustee. In short, we think that, if Heath's or the trustee's right to prevent a compromise had been intended to be applicable only before judgment, and not when there was an appeal, the compromise order of 1959 would have said so. It does not.

The order is reversed with directions to enter an order disapproving of the compromise.

BARNES, Circuit Judge (dissenting):

I dissent. The interpretation of the October 20, 1959 compromise, as made by the referee and followed by the district court, is reasonable in view of the various rights waived therein and the general tenor of the instrument.

The trustee thought it best there be no appeal. Seymour-Heath could have appealed, had he desired, and been able, to post a bond. This he did not do. The July 30, 1965 order is final. Any appeal by American Pumice has lapsed. Thus, the question here involves the compromise of a judgment, not a cause of action. The October 20, 1959 compromise refers, in paragraphs 1(g) to Heath's right to approve any compromise "of the condemnation action," not to approve *any* compromise, or the compromise of any *judgment*, after trial. It may be presumed that the parties anticipated an ultimate solution by some judgment in the condemnation proceedings.

The parties did not state that Seymour-Heath had a right to veto any compromise of a judgment. The parties anticipated that if Seymour-Heath was not satisfied with the judgment obtained, he could force an appeal, but required the posting of a bond. This he never accomplished.

While it is true that the proposed compromised judgment will insure that attorneys are paid and that the condemnee waives interest in a substantial sum due from the government, the government waives any claims for taxes on the award

---

6. Heath may have abandoned his right to appeal because of belief that the entire amount of the condemnation judgment, including the large sum of accrued inter- est, would be recovered and in the security of his belief that the original order prevented agreed reduction of the judgment without his written consent.

(including capital gains tax), and waives certain large tax renegotiations' claims against two of the corporations, which amount to almost half a million dollars (though the validity of such government claim is disputed). Each of these waivers can be of substantial value to the bankrupt estate.

I do not believe this appellate court has the omniscience to overrule the judgment of the trustee, the referee, the district court, and reputable counsel (particularly skilled in condemnation matters), on the assumption that an original "owner of the stock of the corporations" has better judgment as to the value of the properties condemned, after there has been a proper trial and judgment, and where the possible proceeds relate to a bankruptcy of some twenty-one years standing.