**STEWART DIE CASTING CORPORATION v. NATIONAL LABOR RELATIONS BOARD.**

**No. 7132.**

Circuit Court of Appeals, Seventh Circuit.

June 5, 1942.

Rehearing Denied Aug. 17, 1942.

See, also, 114 F.2d 849.

Silas H. Strawn, Frank H. Towner, and Thomas S. Tyler, all of Chicago, Ill., for petitioner.

Thomas L. Owens, of Chicago, Ill. for Local 298, United Automobile Workers of America, intervenor.

A. Norman Somers and Robert B. Watts, both of Washington, D.C., I. S. Dorfman, of Chicago, Ill., and Ernest A. Gross, Associate Gen. Counsel., of Washington, D. C., for respondent N. R. L. B.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

This is a labor proceeding, wherein Local No. 298, U.A.W.A. moves (1) for leave to intervene, and (2a) for an order modifying our decree of October 18, *1940,* of enforcement of the Labor Board's order against the Stewart Die Casting Corporation, or (2b) in the alternative, for an interpretation of our said order.

The aim of the local is to secure mandatory recognition as the employees' bargaining representative *without* the holding of the election, which was made a prerequisite of such recognition in our order.

Aside from the issue of the Union's right to intervention, we have the narrow issue as to whether we may modify our decree of enforcement *after the term at which it was entered, has expired.* The National Labor Relations Board expressly takes no position on this matter.[1] The Company opposes any change in our order on the grounds (1) that the proviso in question was suggested as an amendment to the form of order submitted to it by the Board, and the Board acceded to the suggested amendment; (2) the Union is, in effect, seeking an enforcement of the order, which it has no standing in court to demand, under the decision of the Supreme court in Amalgamated Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S. Ct. 561, 84 L.Ed. 738.

More specifically, the Local asks us to delete from paragraph 2 (g) of our order of October 18, 1940, the proviso herewith quoted and italicized:

---

[1] The Board states that it desires neither to consent to nor oppose the granting of the motion, and "suggests that the Local's motion should be decided upon its merits."

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act: * * *

"(g) Upon request, bargain collectively with United Automobile Workers of America, Local 298, as the exclusive representative of all its hourly and piece rate production employees, draftsmen, and watchmen, in respect to rates of pay, wages, hours of employment, and other conditions of employment, *in the event that hereafter in a proceeding under Section 9 (c) of the National Labor Relations Act [29 U.S. C.A. § 159 (c)], the United Automobile Workers of America, Local 298, is designated as, representing a majority, in the appropriate unit, of Petitioner's employees and is so certified by the Board as such representative following an election;* * * *"

In the alternative, the Union prays: "that this Court interpret said decree of October 18, 1940, in the light of the recent decisions of the Supreme Court of the United States to the end that the Petitioner, Stewart Die Casting Corporation, will be required to bargain collectively with said Local 298 as the exclusive representative of Petitioner's employees in the appropriate unit, and that said Stewart Die Casting Corporation be obligated to bargain collectively with said Local 298, without waiting for an election as provided in said Paragraph 2 (g) of the said decree of this court."

Our opinion on the merits (on the petition by the Company for review, and on the request by the Board for an order of enforcement) was announced July 3, 1940 (114 F.2d 849) at our October, 1939, Term (April, 1940, Session). The Board submitted a draft order of enforcement, to which the Company filed objections and requested a modification. The Board, on August 2, 1940, answered the Company's proposed amendment and stated "the Board consents to the modification of paragraph 2 (g) of the proposed decree as suggested * * *." Our order was issued October 18, 1940, which was during the October, *1940,* Term of court. The Company applied for certiorari, which was denied January 13, 1941. Our order of enforcement of October 18, 1940, was not stayed pending the petition for certiorari.

Controversy was and is over the requirement of an election which the Board has failed to call, although on December 9, 1941, the Union petitioned the Board for an election. We therefore have a situation where (a) the local union demands that it be recognized as the bargaining agent; (b) the employer insists that the union be first designated by the employees at an election; (c) the Board declines to call an election.

The employer asserts that the reason back of the Board's action and the Union's effort to modify the order so as to avoid the necessity of an election, is the Union's inability to show a majority or a plurality of employees who are willing to select the Union as their agent.

The Union sought leave to intervene, at the hearing on the merits, but such leave was not granted, although it was permitted to file a brief, which it did.

The Union argues that enforcement orders should not be conditioned upon the holding of an election to determine the Union's status.[2] The Board supports this view and asserts the broad position, "that the Board may disregard any change of representative made while unfair labor practices, including refusals to bargain, remain unremedied for the reason that, in such circumstances, the employees might still be subject to improper restraints and not have the complete freedom of choice which the Act contemplates."

Assuming for the purpose of the argument the soundness of this view, and assuming that the proviso in paragraph 2 (g) was unauthorized and improper, have we the power to wipe out the proviso, and if we have, should it be exercised? These are the questions before us.

In determining what is our authority in this and like cases, which are arising constantly now, we are first confronted by the rule of law that a court has no jurisdiction to modify its final order after the expiration of the term at which it was entered.[3] The Supreme and inferior Federal courts have so held countless times.

---

[2] N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; International Ass'n of Machinists & D. M. Lodge v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; N. L. R. B. v. P. Lorillard Co., 314 U.S. 512, 62 S.Ct. 397, 86 L.Ed. —.

[3] Bronson v. Schulten, 104 U.S. 410, 26 L.Ed. 797; United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129;

The rigidity of this rule has now been lessened, if not wiped out, so far as the District Courts are concerned, by Rule 6(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides: "The period of time provided for the doing of any act or the taking of any proceeding is not affected or limited by the expiration of a term of court. The expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action which has been pending before it."

Rule 60 provides:

"Clerical mistakes in judgment, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

"On motion the court, upon such terms as are just, may relieve a party or his legal representative from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. *The motion shall be made within a reasonable time, but in no case exceeding six months after such judgment, order, or proceeding was taken.*"

But these rules, whatever their scope, have no application to the Circuit Court of Appeals (Nachod et al. v. Engineering Research Corp., 2 Cir., 108 F.2d 594, holding specifically Rule 6 (c) does not apply to C.C.A.), and therefore the loss of jurisdiction with the ending of the term at which the order was entered, still applies unchanged to this court's judgments and decrees.

To support its position, the Union relies on Solvay Process Co. v. N.L.R.B., 5 Cir., 122 F.2d 993. We believe that case differs from the instant one in that the application for modification must there have been made during the *same term* as the original decree. We reach this conclusion from the fact that the decree sought to be modified

was entered, March 27, 1941, and the opinion granting modification was announced October 7, 1941. The application was made at least some time before the announcement of the opinion. The Fifth Circuit's Rules, Rule 3, provides that its annual term at New Orleans, Louisiana, should begin *on the third Monday in November,* which is later than the modification of the opinion. From this, we conclude that the modification occurred at the *same term* as that at which the original decree was entered.

The Union also cites this court's per curiam opinion in McQuay-Norris Co. v. N.L.R.B. 7 Cir., 119 F.2d 1009, wherein we held the court had power to modify a decree theretofore entered by it in a labor case. In that case, however, as in the Solvay case, the modification was made in the *same* term as that of the entry of the original decree.

We are aided in the decision of this case by the very apt and enlightening opinion of the Court in United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 462, 76 L.Ed. 999. It involved a consent decree of injunction in a suit by the United States under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, by which decree a monopolistic combination of meat packers was dissolved, and the individual units were enjoined from trading in certain foodstuffs outside the meat industry. The packers alleged that changed conditions in the food industry warranted a modification of the decree.

The Court drew the very logical distinction between injunctions, executory in nature, which might, under limited conditions, be modified, and injunctions predicated upon rights fully accrued which could not be subsequently changed.

We quote from this opinion:

" * * * Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. *If the reservation had been*

---

Kingman & Co. v. Western Co., 170 U. S. 675, 18 S.Ct. 786, 42 L.Ed. 1192; Delaware L. Co. v. Rellstab, 276 U.S. 1, 48 S.Ct. 203, 72 L.Ed. 439; Tubman v. Baltimore & O. R. Co., 190 U.S. 38, 39, 23 S.Ct. 777, 47 L.Ed. 946; Gagnon v. United States, 193 U.S. 451, 24 S.Ct. 510, 48 L.Ed. 745; Wetmore v. Karrick, 205 U.S. 141, 27 S.Ct. 434, 51 L.Ed. 745; In re Metropolitan Trust Co., 218 U.S. 312, 31 S.Ct. 18, 54 L.Ed. 1051; Cameron v. McRoberts, 3 Wheat. 591, 4 L.

Ed. 467; Sibbald v. United States, 12 Pet. 488, 9 L.Ed. 1167; Bank of United States v. Moss, 6 How. 31, 12 L.Ed. 331; Brown v. Aspden's Adm'rs, 14 How. 25, 14 L.Ed. 311; McMicken v. Perin, 18 How. 507, 15 L.Ed. 504; Noonan v. Bradley, 12 Wall. 121, 20 L.Ed. 279; Schell v. Dodge, 107 U.S. 629, 2 S.Ct. 830, 27 L.Ed. 601; Buckeye Coal Co. v. Hocking Co., 269 U.S. 42, 46 S.Ct. 61, 70 L.Ed. 155

*omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.* \* \* \*

*"The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative.* \* \* \*"

Our conclusion is, therefore, that while we are without authority, ordinarily, to modify our final decrees after the expiration of the term at which they are entered, there is, as there must be, an exception to this rule, applicable alike to this, as to District Courts. This exception recognizes in us the power to modify any part of a decree which has become inapplicable by reason of changed conditions and circumstances arising subsequent to its entry. The action which the decree calls for may, of necessity, contemplate change in future events and the thought which the decree expresses is charged with future changed conditions which, of necessity, imply reservation of jurisdiction in the court making the order.

This brings us to a consideration of the decree which was entered in the instant cause. What was its nature? Was it a "continuing," "executory" decree, or was it a final decree based upon existing facts, permanent in nature?

We conclude this decree is predominantly of the continuing and executory nature, although several provisions thereof are distinctly of the other character—such as offering to specific persons full reinstatement to their former employment; provisions for their compensaton for their loss of pay; also the posting of notices stating compliance with the order, and the requirement that the Regional Director be notified of its compliance.

But the paragraph of the decree which is here the subject of the motion to modify, seems to us to be of that variable character determined by unknown future events, which might, under some circumstances, warrant a change in the terms of the decree. The company is ordered to bargain with the specific union, in the event that it is so selected at an election by a majority, and so certified by the Board.

That paragraph might become obsolete should the union be dissolved,—should there never be a certification, as well as for other reasons.

The employer challenges the right of the employees, as such, to invoke this court's jurisdiction. Reliance is on that group of cases of which Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 60 S.Ct. 561, 563, 84 L.Ed. 738, is the authoritative voice. There, it was said:

"The Act [National Labor Relations Act, § 1 et seq., 29 U.S.C.A. § 151 et seq.] then sets forth a definite and restricted course of procedure. A charge of an unfair labor practice may be presented to the Board, but the person or group making the charges does not become the actor in the proceeding. It is the Board, and the Board alone \* \* \* which has power to issue its complaint against the person charged with the unfair labor practice. \* \* \*

"When the Board has made its order, the Board alone is authorized to take proceedings to enforce it. For that purpose the Board is empowered to petition the Circuit Court of Appeals for a decree of enforcement. \* \* \* the Act gives no authority for any proceeding by a private person or group, or by any employee or group of employees, to secure enforcement of the Board's order. The vindication of the desired freedom of employees is thus confided by the Act, by reason of the recognized public interest, to the public agency the Act creates. \* \* \*

"We think that the provision of the National Labor Relations Act conferring exclusive power upon the Board to prevent any unfair labor practice, as defined \* \* \* necessarily embraces exclusive authority to institute proceedings for the violation of the court's decree directing enforcement. The decree in no way alters, but confirms, the position of the Board as the enforcing authority. It is the Board's order on behalf of the public that the court enforces. It is the Board's right to make that order that the court sustains. The Board seeks enforcement as a public agent, not to give effect to a 'private administrative remedy'. \* \* \* As the court has no jurisdiction to enforce the order at the suit of any private person or group of persons, we think it is clear that the court cannot entertain a petition for

violation of its decree of enforcement save as the Board presents it."

But the facts here are somewhat different. We are dealing with a situation where the beneficiary of a judical *decree* is seeking relief obtainable nowhere else. The proceeding which resulted in this decree, to which they ask the court to give effect, was, it is true, instituted by the Board.

In this proceeding, the Board and employer were the opposing parties. Congress evidently believed that better results and less partisan efforts would be accomplished if the employees, whose interests might be divergent (or if they thought differently as to the merits of competing unions), were not a party. But, after the hearing is thus had and the proceedings are closed by a final decree, wherein provision is made for certain benefits to the employees, or some of the employees, it is hard to explain why the employees who are given benefits under that decree, should be refused a standing in any court to assert those benefits.

Assume, for example, that employees A, B, C, D, and E are each entitled to back pay for three months. The decree so provides. The time for appeal has gone by. The Board, as here, sits by and refuses, upon request, to take action to enforce employees' rights. The employer is quite satisfied with the status quo. Most unappealing would be the contention that the said members of the union, A, B, C, D, and E, are without a remedy and the court which entered the decree is without jurisdiction to enforce it, at the request of said A, B, C, D, and E, because of non-action by the Board, which has no personal interest in the award.

In such a situation, we are disposed to distinguish the Consolidated Edison case. At least for the purpose of this argument, we may concede the employees a standing in this court for the purpose of making their application for a modification of our final decree.

This brings us to the nub of the case, to the heart of the controversy. Assuming jurisdiction, and conceding the employees' right to invoke our jurisdiction, is this a proper case for the modification of our final decree entered two years ago? What the Union wants is the elimination of that part of the decree which calls for an election by the employees before its recognition, as the bargaining agent. No individual benefits and no individual rights are involved. The Union wishes to speak for the employees and seeks the right to act as their bargaining agent without an election. The inference seems unavoidable that the Union is not willing to submit the question to the employees for determination and thus take the risk of repudiation by the employees.

As was aptly stated in the Swift case, supra: "There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at the time of its making. *We are not at liberty to reverse under the guise of readjustment."*

At the time this injunction was granted the Board and the employer agreed to the inclusion of this proviso in this decree. The fact that they so agreed and that neither now claims it should be eliminated, is persuasive proof of the fact that it is neither oppressive nor intolerable.

The fundamental basis of the Union's right to act as bargaining agent is the employees' consent. Nothing would be more repugnant to the spirit of the Act than to assume that a union which is a stranger to, or which is unpopular with, the employees, should still be their bargaining agent. The right of the employees to select their bargaining agent is the fundamental thought of the Act. Whether this court should have inserted the provision in the order, even though the parties consented thereto, is beside the question. It was placed in the final order. Lapse of time has failed to change the situation other than perhaps to suggest that the Union, notwithstanding it has not the support of the employees as strongly as it once had, wishes to become the bargaining agent with or without the employees' support which an election would indicate.

The order will be: The petition for leave to intervene may be filed. The petition is denied for want of equity.